105 F.3d 1313
 20 Employee Benefits Cas. 2479, 97 Cal. Daily
Op. Serv. 679,
97 Daily Journal D.A.R. 1081,
Pens. Plan Guide (CCH) P 23,931
Joseph VELARDE; Rene Barreda; Maun Boettcher; Phillip
Borboa; Danita Ewing; Jeffrey Fleming; Carlos Gonzales,
Jr.; Hernando Hernandez; Matthew Lansbery; James Deon
Lennox; Rigoberto Mata; Ines B. Mendez; Perla Mendoza;
Steven Miller; Cisco Monteverde; Deborah Morrison; Gerald
Ogden, Jr.; Anthony Robb; Robert P. Sahhar; Luis A.
Sandoval, Jr.; Sheri Stone; Luis F. Varela and Benjamin R.
Winegrad, Plaintiffs-Appellees-Cross-Appellants,
v.
PACE MEMBERSHIP WAREHOUSE, INC., Defendant-Appellant-Cross-Appellee.
 Nos. 95-17190, 95-17278.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 12, 1996.
Decided Jan. 29, 1997.
 
 Amy J. Gittler, Brown & Bain, Phoenix, Arizona, for plaintiffs-appellees-cross-appellants.
 Tibor Nagy, Jr., Snell & Wilmer, Tucson, Arizona, for defendant-appellant-cross-appellee.
 Appeals from the United States District Court for the District of Arizona, John M. Roll, District Judge, Presiding. D.C. No. CV-94-00198-JMR.
 Before: FLETCHER, WIGGINS, and T.G. NELSON, Circuit Judges.
 Opinion by Judge FLETCHER.
 FLETCHER, Circuit Judge:
 
 
 1
 PACE Membership Warehouse, Inc. ("PACE") appeals from a district court grant of summary judgment in favor of 25 former PACE employees ("plaintiffs" or "employees") and from an award of treble damages and attorney's fees to the plaintiffs. The employees cross-appeal from the district court's decision limiting attorney's fees. The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.
 
 I. BACKGROUND
 
 2
 In November 1993, PACE Membership Warehouse, Inc. in Tucson, Arizona notified its workers that they would be terminated effective January 1, 1994 because the Warehouse was going to be permanently closed. In mid-December 1993, PACE made offers to a number of employees, including the 25 plaintiffs, to become members of the "stay on team." This offer was contained in a letter ("Stay On Letter") which was drafted by PACE and signed by each of the plaintiffs.
 
 
 3
 The Stay On Letter provided that, if the solicited employee worked through the approximate date of January 18, 1994,[1] she would receive a "stay on bonus" and severance pay. The stay on bonus totalled 4 weeks of pay at the employee's "rate of base pay as of December 24, 1993." The severance pay was to be computed at the same rate with one week of severance pay for each full year of employment with PACE, with a minimum of 2 years' employment. According to this agreement, the employee would receive the bonus and severance pay unless she was terminated for cause prior to the projected date or she voluntarily separated before that date.
 
 
 4
 At some point in late December 1993, after making the stay-on offer, and after most of the plaintiffs had accepted the offer, PACE decided not to close the Tucson Warehouse but to sell it to Sam's Club instead. On December 23, 1993, PACE posted a notice to the employees in the Tucson Warehouse announcing this decision. However, not all of the plaintiffs were aware of this announcement.
 
 
 5
 All of the plaintiffs continued working for PACE until approximately January 14, 1994, the last date PACE owned and operated the warehouse. Sam's Club then purchased the Warehouse and the plaintiffs stayed on to work for Sam's Club in their former capacities. Because they had completed what was required of them in the Stay On Letters, i.e., to continue working for PACE through mid-January, the plaintiffs demanded that PACE pay the stay on bonus and severance pay. PACE, however, refused to pay. The plaintiffs then brought this action for breach of contract.[2]
 
 
 6
 The plaintiffs moved for summary judgment on PACE's liability for breach of contract, treble damages, and attorneys' fees. PACE asserted that the plaintiffs' state law breach of contract claims were preempted by ERISA and, alternatively, that PACE did not breach a contract with the plaintiffs. The district court ruled that ERISA does not apply to this contract. The district court then granted the plaintiffs' motion for summary judgment on the breach of contract claim and awarded the plaintiffs contract damages, including treble damages as authorized under Arizona law when an employer fails to pay wages due. The district court further ordered that, pursuant to Arizona law, as the prevailing party in a contract cause of action the plaintiffs were entitled to attorney's fees. The parties then briefed the proper amount of attorneys' fees. The court granted the plaintiffs attorneys' fees in the amount of $65,000. Although the plaintiffs sought $92,144.50 in attorneys' fees, the district court limited the recovery of attorneys' fees to one-third of the plaintiffs' damages award of $195,000 because the court determined that this was the amount the plaintiffs were required to pay under their contingency fee agreement.II. ERISA PREEMPTION
 
 
 7
 As a threshold matter, we consider whether the district court correctly ruled that the plaintiffs' state-law claims are not preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").[3] Our review is de novo. Inland Empire Chapter of Assoc. Gen. Contractors v. Dear, 77 F.3d 296, 299 (9th Cir.1996).
 
 
 8
 PACE argues that the Stay On Letter, which provides for severance benefits, is an "employee benefit plan" within the meaning of ERISA and, as such, plaintiffs' state law breach of contract claims are preempted. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." ERISA § 514(a); 29 U.S.C. § 1144(a). The definition of "employee benefit plan" can include severance benefits. 29 U.S.C. § 1002(1); 29 C.F.R. § 2510.3-1(a)(3); Delaye v. Agripac, Inc., 39 F.3d 235 (9th Cir.1994) (severance pay may constitute plan within the meaning of ERISA), cert. denied, 514 U.S. 1037, 115 S.Ct. 1402, 131 L.Ed.2d 289 (1995); Bogue v. Ampex Corp., 976 F.2d 1319 (9th Cir.1992) (severance pay considered "employee welfare benefit plan" under ERISA), cert. denied, 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993); Scott v. Gulf Oil Corp., 754 F.2d 1499 (9th Cir.1985); Blau v. Del Monte Corp., 748 F.2d 1348, 1352 (9th Cir.1984), cert. denied, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). "[A] relatively simple test has emerged to determine whether a plan is covered by ERISA: does the benefit package implicate an ongoing administrative scheme? " Delaye, 39 F.3d at 237 (citing Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 12, 107 S.Ct. 2211, 2217-18, 96 L.Ed.2d 1 (1987)) (emphasis added).
 
 
 9
 Following our holding in Delaye, the district court concluded that the Stay On Letter does not constitute an "employee benefit plan" because it does not require an ongoing administrative scheme. PACE contends that the district court erred because the Stay On Letter created a plan similar to that in Bogue where we found the plan did constitute an employee benefit plan.
 
 
 10
 In Bogue, we concluded that a special compensation program for 10 key executives was an employee benefit plan under ERISA because the plan involved more than "[t]he theoretical possibility of a one-time obligation in the future." 976 F.2d at 1322 (quoting Fort Halifax, 482 U.S. at 12, 107 S.Ct. at 2217-18). The program provided for severance benefits if the employee was terminated and neither the employer, nor the new owner of the business, offered "substantially equivalent" employment. Id. at 1321. In that situation, the employer "was obligated to apply enough ongoing, particularized, administrative, discretionary analysis to make the program ... a 'plan.' " Id. at 1323.
 
 
 11
 In Delaye, however, we rejected an employee's argument that a severance benefits package is a "plan" for purposes of ERISA. The contract in Delaye provided that if the employer terminated the employee for cause he would receive only his yearly base compensation. However, if termination was without cause the employee would receive a larger benefits package. The court found that this contract did not implicate an ongoing administrative scheme because "there is nothing discretionary about the timing, amount or form of the payment." Delaye, 39 F.3d at 237. The Delaye court distinguished Bogue in two ways. Id. at 238. First, the severance plan in Bogue went into effect only if the covered employee was terminated and not offered "substantially similar" employment. Id. Determining whether employment was "substantially similar" required "ongoing administrative analysis." Id. Second, Bogue 's severance package covered ten top executives and thus the employer would need to make ten separate discretionary determinations. Id.
 
 
 12
 PACE argues that the Stay On Letter contained two "eligibility" requirements which create an ongoing administrative scheme, necessitating ongoing particularized discretion, and thereby bringing the severance pay under the definition of a "plan" for purposes of ERISA preemption. These "eligibility" requirements are: (1) that the employees perform their duties in a satisfactory manner, and (2) that the employees not be terminated for cause before the specified date. At minimum, PACE argues, there exists a material issue of fact as to whether the Stay On Letter constitutes an ERISA plan making summary judgment inappropriate. We disagree.
 
 
 13
 Here, as in Delaye, the employer was simply required to make a single arithmetical calculation to determine the amount of the severance benefits. While in both cases, a "for cause" termination would change the benefits due to the employee, the Delaye court did not deem this minimal quantum of discretion sufficient to turn a severance agreement into an ERISA plan. Contrary to PACE's assertions, the key to our holding in Bogue was that there was "enough ongoing, particularized, administrative discretionary analysis," 976 F.2d at 1323 (emphasis added), to make the plan an "ongoing administrative scheme," not that the agreement simply required some modicum of discretion. The level of discretion, if any, which PACE was required to exercise in implementing the agreement was slight. It failed to rise to the level of ongoing particularized discretion required to transform a simple severance agreement into an ERISA employee benefits plan.
 
 
 14
 As in Delaye, the Stay On Letter is not a "plan" for purposes of ERISA preemption because it necessitates no "ongoing administrative scheme." To qualify for the severance and bonus pay, the plaintiffs were required simply to work in a satisfactory manner until the required date. Because the Stay On Letter is not a "plan" for purposes of ERISA, the plaintiffs' state-law claims are not preempted. The district court did not err.
 
 III. BREACH OF CONTRACT
 
 15
 We next turn to the central question: did the district court err in granting summary judgment to plaintiffs on their breach of contract claim? The district court concluded (1) that there was a valid contract between the parties, and (2) that PACE breached the express terms of that contract. A grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).
 
 A.
 
 16
 PACE argues that the intent of the parties was that the contracts were operative only if the Warehouse in fact closed. Such an intent is not reflected in the express terms of the agreement. According to PACE, Arizona law requires us to look beyond the four corners of the document to consider the circumstances, prior understandings, and the parties subsequent conduct. Taylor v. State Farm Mut. Auto. Ins. Co., 175 Ariz. 148, 854 P.2d 1134, 1139-41 (1993) (rejecting the view that there must be ambiguous language in the contract before a court can look to parol evidence to interpret the meaning of an agreement). However, the Taylor court specifically limited its liberal use of parol evidence to contract interpretation and rejected its use to vary or contradict a final agreement. Id. at 1139-40 ("[E]vidence regarding the intention of the parties [may] illuminate plausible interpretations other than the one that is facially obvious ....") (emphasis added).
 
 
 17
 The Stay On Letter states that "if [the employees] remain actively at work at PACE through the date specified above, [they] will be eligible for the stay on bonus..." It continues, "as long as you work through the date specific above, the stay on bonus and severance pay will be paid." The letter contains no condition that the employees be terminated, that there be a break in employment, or that the Warehouse close down.
 
 
 18
 We find no language in the contract which is susceptible to competing interpretations. This is not a case of contract interpretation to which Taylor could apply. PACE essentially seeks addition of an implied condition precedent to the contract. This we cannot do.
 
 B.
 
 19
 PACE further argues that, by posting a notice to its employees that the Warehouse would not close, it effectively modified or rescinded the contract and that, by continuing to work after the notice was posted, the employees agreed to the modification or rescission. However, a unilateral posting of a notice that the warehouse has been sold cannot affect the contract terms.[4]
 
 C.
 
 20
 Finally, PACE argues that there was no contract at all because there was no meeting of the minds. True there was no meeting of the minds on a term that was not there, but there is no doubt that there was a meeting of the minds as to the terms that were in the contract.
 
 IV. TREBLE DAMAGES
 
 21
 PACE appeals the district court's award of treble damages to the employees for their state law breach of employment contract claim. The district court's treble damages award is reviewed for an abuse of discretion. Apache East, Inc. v. Wiegand, 119 Ariz. 308, 580 P.2d 769, 773 (Ct.App.1978).
 
 
 22
 Arizona Revised Statutes (A.R.S.) § 23-355 provides:
 
 
 23
 If an employer ... shall fail to pay wages due any employee, such employee may recover in a civil action against an employer or former employer an amount which is treble the amount of the unpaid wages.
 
 
 24
 This section applies to severance and bonus pay. Schade v. Diethrich, 158 Ariz. 1, 760 P.2d 1050, 1061 (1988) (construing A.R.S. § 23-350(5), which defines "wages" for purposes of § 23-355, to include severance pay and bonuses). However, if "a reasonable good faith dispute as to the amount of wages due" exists an employer may withhold wages. A.R.S. § 23-352; Apache East, 580 P.2d at 773. PACE argues that there was a good faith dispute here. We disagree.
 
 
 25
 As we explained in section III above, the district court soundly concluded that there was a binding contract between the parties, that the contract unequivocally states that the plaintiffs would be paid for working through a specified date, and that the plaintiffs worked through that date. There were no genuine issues of material fact on any of these issues. That summary judgment was appropriate as to the breach of contract claim suggests that it was not an abuse of discretion for the district court to find that no reasonable good faith dispute exists as to the amount of wages due and, therefore, that the plaintiffs were entitled to treble damages. We affirm the district court award of treble damages.
 
 V. ATTORNEY'S FEES
 
 26
 The district court awarded the plaintiffs attorney's fees for their breach of contract claim pursuant to A.R.S. § 12-341.01.[5] PACE contends that attorney's fees should not have been awarded or, at a minimum, the amount awarded was unreasonable and should be reduced. On cross-appeal, the plaintiffs also dispute the district court's calculation of attorney's fees. The district court's award of attorneys' fees is discretionary and, as such, this court reviews under an abuse of discretion standard. Associated Indem. Corp. v. Warner, 143 Ariz. 567, 694 P.2d 1181, 1185 (1985) (en banc). However, whether the district court properly interpreted and applied the relevant statute is reviewed de novo. Sanborn v. Brooker & Wake Property Management, Inc., 178 Ariz. 425, 874 P.2d 982, 984 (Ct.App.1994).
 
 A.
 
 27
 The Arizona supreme court has enumerated six factors which courts must consider when deciding whether to award attorney's fees to a prevailing party: (1) the merits of the unsuccessful parties' claim or defense; (2) whether litigation could have been avoided or settled; (3) whether assessing fees against the unsuccessful party would cause extreme hardship; (4) whether the successful party prevailed with respect to all relief sought; (5) the novelty of the issues; and (6) whether the award will overly deter others from bringing meritorious suits. Associated Indem., 694 P.2d at 1184.
 
 
 28
 PACE asserts that, because of the "novelty of the legal questions presented," the district court "had the discretion to deny the award...." Certainly, the district court had discretion to deny the award. The district court in exercising discretion, considered each of the factors, and concluded that attorney's fees were appropriate. We conclude that the district court properly considered the relevant factors, and its conclusions are supported by ample evidence in the record. Accordingly, we find that the district court did not abuse its discretion in awarding attorney's fees.
 
 
 29
 PACE argues that the treble damages award did not "aris[e] out of a contract," A.R.S. § 12-341.01, and, as such, attorney's fees should not be available for this award. According to PACE, A.R.S. § 23-355 (providing for treble damages for an employer's failure to pay wages due an employee) is punitive--not contractual--in nature and therefore attorney's fees are improper for this portion of the plaintiffs' claim. Thus, according to PACE, the fee award should be limited to 1/3 of the amount of the original breach of contract claim ($63,000) or $21,000. This argument also fails. Attorney's fees may properly be awarded in a breach of contract case in which treble damages were awarded under A.R.S. § 23-355. Schade, 760 P.2d at 1064. The district court did not err in awarding attorney's fees for the statutory treble damages claim.
 
 
 30
 Finally, PACE contends that, even if the attorney fee award was not in error, the amount of fees requested by employees, and billed by their attorneys, was unreasonable and excessive. Thus, according to PACE, the district court abused its discretion in calculating the amount of the award. The district court agreed with PACE that some of the hours billed by the employees' attorneys over the past year are questionable. However, the district court found that "any reduction in hours would not have been as significant as the reduction in fees required by statute." The district court considered PACE's arguments regarding the reasonableness of plaintiffs' fee request, and concluded that the $65,000 award was reasonable. This was not an abuse of discretion.
 
 B.
 
 31
 The plaintiffs cross-appeal the district court's limit of the attorney's fees award to one-third of the total damages award. The plaintiffs sought $92,144.50 in attorneys' fees. The district court granted $65,000. A.R.S. § 12-341-01B limits the recovery of attorney's fees to the amount that the prevailing party agreed to pay. The fee agreement between the plaintiffs and their attorneys provided that the attorneys would receive 1/3 of the "total amount recovered on ... behalf [of the employees]." It further provided that, in the event that the court awards attorneys' fees, the attorneys would receive either "the 1/3 contingent fee (on the total amount recovered) or the amount awarded by the court, whichever is greater." The district court found that, based on the language of this agreement, the plaintiffs would not be required to pay more than 1/3 of the damages award. Thus, the court determined that $65,000 was an appropriate amount.
 
 
 32
 The plaintiffs argue that the district court misinterpreted the fee agreement and that their counsel was to receive 1/3 of the "total amount recovered" which was meant to include attorney's fees awarded by the court. They assert that 1/3 of this amount is $95,714.83, which is greater than the $92,144.50 which they requested. The district court, however, read the fee agreement as limiting the "total amount recovered" to the plaintiffs' damages award excluding attorneys fees awarded by the court. Thus it concluded that the phrase "total amount recovered" should be given the same meaning each time it is used in the agreement. This was a reasonable interpretation of the fee agreement. The district court did not abuse its discretion when it limited the plaintiffs' recovery of attorneys' fees to 1/3 of their damages award, or $65,000. We affirm the amount of the fee award.
 
 C.
 
 33
 The plaintiffs request attorney's fees on appeal pursuant to A.R.S. § 12-341.01. We have the discretion to award fees. Wenk v. Horizon Moving & Storage Co., 131 Ariz. 131, 639 P.2d 321, 323 (1982). A review of the record supports awarding fees to the plaintiffs for the cost of defending this appeal. Applying the six Associated Indem. factors here, we conclude that an award of fees is appropriate. PACE's position lacked merit, litigation could have been avoided, PACE has made no showing of extreme hardship, the plaintiffs prevailed on all points, the issues are not novel, and no improper deterrence of actions would occur.
 
 
 34
 We therefore grant the employees' request for appellate attorney's fees. The question of the amount of attorneys fees is referred to this court's Appellate Commissioner for initial consideration and recommendation.
 
 CONCLUSION
 
 35
 The district court did not err in granting summary judgment to the plaintiffs in their breach of contract claim against their former employer. Furthermore, the district court did not abuse its discretion in awarding treble damages and attorney's fees. Finally, we find that the Plaintiffs are entitled to an award of attorney fees for successful prosecution of this appeal.
 
 
 36
 AFFIRMED.
 
 
 
 [1]
 The stay on letter erroneously stated that the employees must stay on through January 18, 1993. However, the letters were signed in mid-December 1993 and the Warehouse was targeted to close on January 1, 1994. The closing down process was supposed to take approximately 2 weeks. Thus, it is clear that the intended date was January 18, 1994
 
 
 [2]
 The Plaintiffs originally filed a complaint in Arizona State Court. PACE removed the case to the District Court for the District of Arizona based on the diversity of the parties. 28 U.S.C. § 1332(a)(1). At the time the suit was brought, PACE and the plaintiffs were citizens of different states
 
 
 [3]
 29 U.S.C. § 1001, et seq
 
 
 [4]
 As the employees point out, PACE's theory of contract modification would place the employees in a no-win situation. If we accept PACE's argument, the employees accepted a modification which vitiated the contract by continuing to work after the notice was posted and if they ceased working after the notice was posted they would have breached the contract. Either way they lose
 
 
 [5]
 "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees." A.R.S. § 12-341.01(A). The intent of this statute is for the successful party to recover under ordinary circumstances. G & S Investments v. Belman, 145 Ariz. 258, 700 P.2d 1358, 1368 (Ct.App.1984)