**Steven Howard OKEN, Petitioner,**

v.

**Eugene NUTH, Warden of the Maryland Correctional Adjustment Center and the Maryland Penitentiary, Respondent,**

and

**J. Joseph Curran, Attorney General of the State of Maryland, Respondent.**

Civil No. PJM 97–585.

United States District Court, D. Maryland, Southern Division.

Dec. 18, 1998.

See also 940 F.Supp. 849, 112 F.3d 139.

Fred Warren Bennett, Law Office, Greenbelt, MD, Christopher M. Davis, Davis and Davis, Washington, DC, for petitioner.

Ann N. Bosse, Gwynn X. Kinsey, Jr., Office of Attorney General, Baltimore, MD, for respondents.

## AMENDED OPINION

MESSITTE, District Judge.

### I.

Steven Howard Oken, an inmate under sentence of death by the State of Maryland, has petitioned the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Oken has filed a "Motion for Order Declaring Maryland not be an Opt–In State" which the State has answered through its own Motion to Dismiss. Resolution of the issue depends upon whether Maryland qualifies for the shortened time limits available to states if certain conditions are met regarding the appointment of counsel and the reasonableness of compensation in state post-conviction proceedings. *See* Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2261–2266.[1] Based on the record of

---

1. 28 U.S.C § 2261(b), as amended by the 1996 Act, provides in pertinent part:

   This chapter [Chapter 154] is applicable if a State establishes by statute, rule of its court of last resort, or by another agency authorized by State law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have

   otherwise become final for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

   Among other things, Chapter 154 provides that prisoners filing federal habeas suits in opt-in states must file their petitioners within 180 days after final state court affirmance of their conviction and direct review. 28 U.S.C. § 2263(a) In such cases, the federal habeas court must consider the case before all non-capital matters,

this case, the Court will GRANT Oken's Motion and DENY the State's Motion, *i.e.* the Court holds that Maryland is not an Opt-in State so as to qualify for the shortened periods of review set out in the AEDPA.

## II.

The somewhat prolonged period over which this case and particularly these motions have been pending merits preliminary comment. The Petition for the Writ was filed on February 27, 1997; the State's answer on April 8, 1997; Oken's Motion for Order Declaring Maryland not to be an Opt-in State on May 5, 1997 and the State's Motion to Dismiss on June 12, 1997.

On July 8, 1997, the Court entered an order staying consideration of the merits of the petition until such time as the opt-in issue might be resolved.

Throughout this period, however, the Court was faced with a dilemma. Oken, Petitioner here, was also one of five Plaintiffs in *Booth v. Maryland,* 940 F.Supp. 849 (D.Md.1996), *reversed,* 112 F.3d 139 (4th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2063, 141 L.Ed.2d 140 (1998) In Booth, following a full evidentiary hearing, Chief Judge Motz of this Court had held that Maryland was not an Opt-in State, hence not eligible for, among other things, the shortened time limitations of the AEDPA. *Id.* at 854. The Fourth Circuit, in vacating and remanding Chief Judge Motz's decision with instructions to dismiss, decided the case not on the issue of Maryland's status *vel non* as an Opt-in State, but on the ground that the action of the five prisoners was barred by immunity under the Eleventh Amendment to the U.S. Constitution. *Booth,* 112 F.3d at 144. Despite Oken's Motion for Stay of Mandate pending Petition for Writ of Certiorari, the Fourth Circuit, on May 27, 1997, without explanation, denied the Motion. On August 18, 1997, however, the U.S. Court of Appeals for the Ninth Circuit decided *Ashmus v. Calderon,* 123 F.3d 1199 (9th Cir. 1997), concluding that the Eleventh Amendment did not bar a declaratory action by state prisoners facing the death penalty.

The decision in *Ashmus* clearly buttressed Oken's argument that the Eleventh Amendment immunity argument presented a "substantial question" for stay purposes and, moreover, given the split in circuits over the question, that the grant of certiorari in either *Ashmus* or *Booth* or both had become increasingly likely. In fact, on December 5, 1997, the Supreme Court granted certiorari in *Calderon v. Ashmus,* —— U.S. ——, 118 S.Ct. 596, 139 L.Ed.2d 432 (1997), at the same time holding the petition for certiorari in *Booth* under advisement.

Under the circumstances, this Court decided to defer decision of the opt-in issue. Given the distinct possibility that the Supreme Court might accept the Ninth Circuit as opposed to the Fourth Circuit view of state immunity, there was a corresponding possibility that *Booth* would be reversed, with the result that Maryland's non-qualification as an Opt-in State would already have been decided by Chief Judge Motz in favor of the *Booth* plaintiffs, Oken included.

Accordingly, this Court abided the Supreme Court's decision in *Ashmus* and its action on the *Booth* Petition for Certiorari. The Supreme Court decided *Ashmus* on May 26, 1998, reversing it on grounds other than the Eleventh Amendment. *Calderon v. Ashmus,* 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998). The Petition for Certiorari in *Booth* was denied on June 1, 1998. *Booth v. Maryland,* —— U.S. ——, 118 S.Ct. 2063, 141 L.Ed.2d 140 (1998).

At that point the matter would have been ripe for decision by this Court, but for one further procedural request raised by the State.

## III.

At the beginning of this case, the State stipulated with Oken that the case would proceed on the record made before Chief Judge Motz in *Booth.* Presumably the State's logic was that, if the Eleventh Amendment issue were resolved in its favor on appeal, a new evidentiary hearing would be unnecessary. Indeed, no evidentiary hearing was ever contemplated for the pres-

§ 2266(a) and must enter a final judgment within

180 days from the filing date, § 2266(b)(1)(A).

ent case. In the course of the *Booth* appeal, however, the State apparently came to the view, based on "new documents and information ... previously unavailable," that there was a need to supplement the *Booth* record. On June 16, 1998, therefore, the State filed a motion seeking leave to supplement the record in this case and on June 29, 1998 Oken filed his objection. On August 24, 1998, the Court heard oral argument on the motion and on that same date, ruling from the bench, denied the State's motion. The parties, however, did agree to one limited stipulation to supplement the *Booth* record and asked for leave to file the stipulation in written form of the Court. On September 3, 1998, the written stipulation was filed.

The opt-in issue has been ready for decision since that time.

## IV.

■ There is little need to recast Chief Judge Motz's analysis in *Booth* because this Court, even with the slightly revised stipulation recently agreed to by the parties, is in virtually total agreement with that analysis. In fact, except in the limited respects noted hereafter, the Court adopts by reference Part II of Chief Judge Motz's Opinion, as set out at 940 F.Supp. at 852–855.[2] A brief summary of the Court's reasons for holding that Maryland is not an Opt-in State is appropriate.

In general, the Court relies on these reasons:

1) Maryland does not have codified "competency standards" for the appointment of post-conviction counsel as required by 28 U.S.C. § 2261(b).

2) The compensation rates for these attorneys do not satisfy the statute.

3) Although commercial photocopying expenses are fully reimbursable under the State's plan and computerized legal research is reimbursable with the proviso that the

payment for computerized legal research expenses and attorney's fees can not exceed $12,500.00, the reimbursable sums are not sufficient to raise the attorney compensation to an otherwise reasonable level within the meaning of the statute.

## V.

■ As to the lack of "competency standards," the Court agrees with Chief Judge Motz' reasoning in *Booth* that such standards must be established whether retention of post-conviction counsel is by rule of court, statute, or by "another agency authorized by State law," implicitly the State Officer of Public Defender. Since Maryland has adopted no rule of court or statute and since the State Office of Public Defender has established and follows no competency standards in these cases,[3] the State fails to qualify for the benefits of Chapter 154.

## VI.

The Court also finds that Maryland provides no mechanism for the "compensation ... of competent counsel in State post-conviction proceedings," a separate condition that must be satisfied if the benefits of Chapter 154 are to be gained. The Court concludes, as did Chief Judge Motz, that it is unreasonable to compensate an attorney who represents a defendant in a state post-conviction capital case at a rate ($30.00 to $35.00 per hour at best) substantially less than the rate necessary for the attorney to pay his share of a law firm's overhead ($53.00 per hour). The disparity between the hourly rate paid to appointed attorneys in State capital proceedings ($30.00 to $35.00) as opposed to the rate paid to counterpart attorneys in federal cases (up to $125.00) is further evidence of the less than reasonable level of the State's payment.

Then there is the matter of the reasonableness of litigation expenses. Although the

---

**2.** Accord, *Colvin–El v. Nuth*, 1998 WL 386403 (D.Md.) (Williams, J.)

**3.** The Court finds that 28 U.S.C. § 2261(b) refers to criteria for the *selection* of post-conviction counsel, not merely for their *eligibility* to serve. To the extent that the State relies on COMAR

14.06.02.05.B, the conclusive evidence here, as in *Booth*, is that the State did not, at relevant times, apply—indeed it was apparently largely ignorant of—that regulation. Accordingly, no criteria for the *selection* of post-conviction counsel were in place.

parties now stipulate, contrary to Chief Judge Motz's finding in *Booth*, that the State fully reimburses counsel for commercial photocopying expenses and that computerized legal research is reimbursable with the proviso that the payment for computerized legal research expenses and attorneys fees can not exceed $12,500.00, the net result remains unchanged.

### VII.

Finally there is Council Order No. 113, adopted by the Fourth Circuit on October 3, 1996, which the State argues requires expedited review in this case whether or not Maryland is deemed an Opt-in State. In the time since this issue was briefed to this Court, the Fourth Circuit decided *Truesdale v. Moore*, 142 F.3d 749 (4th Cir.), *cert. denied*, ___ U.S. ___, 119 S.Ct. 380, 142 L.Ed.2d 314 (1998), upholding the validity of the Order. But as the Fourth Circuit pointed out in *Truesdale*:

> ... Order No. 113 provides simply that the Circuit Executive can monitor compliance with the timetable by inquiring into the reasons for delay. Contrary to Truesdale's assertion, the order does not decide whether any state within the Fourth Circuit satisfies the requirements of Chapter 154, and it does not remove the incentive for states to acquire the right to bring a mandamus action by meeting Chapter 154 requirements.

142 F.3d at 759.

More precisely to the point in the present case:

> If a case is not timely decided the Circuit Executive may seek an explanation of the reasons why the court has not complied with the time limitations. One reasonable explanation, for example, would be that a court needed to hold a case for a critical decision of the Supreme Court or the Fourth Circuit.

142 F.3d at 758.

This Court determined that delay in deciding this case was appropriate for just such a reason, viz. that the case needed to be held for critical decisions of the Supreme Court in *Ashmus* and in *Booth*. Order No. 113 required and requires nothing more; indeed the State sought no mandamus to have the Court decide the case sooner. At the same time, as far as Oken is concerned, as in *Truesdale*, he has failed to show how Order No. 113 has caused him prejudice. His parallel claim in *Booth* was permitted to run its full course and he is now well beyond the 180 days from the filing of his decision that Order No. 113 sets as a target for the District Court's decision.

In summary, Oken prevails for now on the opt-in issue. The Court in short order will deal with the merits of his petition.

A separate Order will issue implementing the present decision.

### AMENDED ORDER

Upon consideration of the Petitioner's Motion for Order Declaring Maryland Not To Be An Opt-in State, the State's Answer and the State's Motion to Dismiss, it is this 18th day of December, 1998, by the United States District Court for the District of Maryland, Southern Division,

ORDERED, that Petitioner's Motion for Order Declaring Maryland Not To Be An Opt-in State is hereby GRANTED; and it is further

ORDERED that Respondents' Motion to Dismiss is hereby DENIED; and it is further

ADJUDGED, ORDERED and DECREED that the State of Maryland is not entitled to invoke the benefits of Chapter 154 of the Anti–Terrorism and Death Penalty Act of 1996 because it has not met the requirements of U.S.C. § 2261(b) as amended by the Act.