**Troy A. ASHMUS, Petitioner–Appellee,**

v.

**Jeanne WOODFORD, Acting Warden of California State Prison at San Quentin, Respondent–Appellant.**

**No. 99–99007.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1999.

Decided Jan. 24, 2000.

As Amended on Denial of Rehearing and Rehearing En Banc March 9, 2000.*

* Judge Graber has voted to deny the petition for rehearing en banc, and Judges Canby and Thompson have so recommended.

Ronald S. Matthias, Deputy Attorney General, San Francisco, California, for respondent-appellant.

Michael Laurence, Habeas Corpus Resource Center, San Francisco, California, for petitioner-appellee.

Mitchell Zimmerman, Fenwick & West LLP, Palo Alto, California, for the amicus. Henry Earl Duncan; Kent S. Scheidegger, Criminal Justice Legal Foundation, Sacramento, California, for amicus Criminal Justice Legal Foundation.

Before: CANBY, THOMPSON, and GRABER, Circuit Judges.

CANBY, Circuit Judge:

Troy A. Ashmus, a prisoner sentenced to death by the California state courts, filed a federal petition for habeas corpus on May 15, 1998. During Ashmus' habeas proceeding, the State sought to avail itself of the procedural advantages of Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[1]

1. Pub.L. No. 104–132, §§ 101–107, 110 Stat 1214, 1217–26 (Apr. 24, 1996), amending 28 U.S.C. §§ 2244 & 2253–2255 (modifying existing Chapter 153) and further codified at 28 U.S.C. §§ 2261–2266 (adding Chapter 154).

Ashmus contested the State's claim, and the district court issued a preliminary injunction enjoining the State from asserting Chapter 154 with respect to his petition. *See Ashmus v. Calderon*, 31 F.Supp.2d 1175 (N.D.Cal.1998) (order) (*Ashmus II*); *see also Ashmus v. Calderon*, 935 F.Supp. 1048 (N.D.Cal.1996) (*Ashmus I*), *aff'd*, 123 F.3d 1199 (9th Cir.1997), *rev'd for lack of a case or controversy*, 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998).[2] The State brings a certified interlocutory appeal challenging the district court's order. We affirm.

## I. BACKGROUND

Before addressing the merits of the State's claim, we review the procedural history of Ashmus' direct and collateral review, the statutory provisions of Chapter 154, the "quid pro quo" arrangement reflected in the legislative history to Chapter 154, and the unitary scheme of collateral review adopted by the State of California in 1989.

### A. *Ashmus' direct and collateral review*

In 1986, Troy A. Ashmus was convicted of murder in California state court and sentenced to death. The State appointed appellate counsel for Ashmus on March 4, 1987. The State of California did not adopt its unitary review scheme in any form until 1989; consequently, when Ashmus received counsel, his attorneys did not have the authority to, nor was it contemplated that they would, develop any collateral claims.

On June 6, 1989, the California Supreme Court promulgated policies providing that "[a]ppellate counsel in capital cases shall have a duty to investigate factual and legal grounds for the filing of a petition for a writ of habeas corpus." Supreme Court Policies Regarding Cases Arising from Judgments of Death, Cal. Court Rules, Vol. 23, Policy 3, at 143(1–1) (West 1996) (1989 Supreme Court Policies). Although Ashmus' state-appointed counsel may have been aware of this change in their obligations, they never received orders to investigate collateral claims.

The California Supreme Court affirmed Ashmus' death sentence on December 5, 1991. Ashmus initiated his federal habeas proceedings on February 17, 1993. *See Ashmus II*, 31 F.Supp.2d at 1177.

### B. *Chapter 154*

California's eligibility to invoke Chapter 154 with respect to Ashmus' habeas petition turns on an interpretation of section 2265(a) of title 28.[3] That section provides:

This chapter shall apply, as provided in this section, in relation to a State unitary review procedure if the State *establishes by rule of its court of last resort or by statute* a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in the unitary review proceedings, including expenses relating to the litigation of collateral claims in the proceedings. The *rule of court or statute must provide standards of compe-*

**2.** Ashmus first challenged the State's eligibility under Chapter 154 in a class action brought on behalf of a class of capital defendants. The district court enjoined the State from invoking Chapter 154 in any federal or state proceeding with respect to a member of the class. This court affirmed on the merits, but the Supreme Court reversed for lack of a case or controversy. *See Calderon v. Ashmus*, 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998).

**3.** A state with a qualifying unitary review procedure can opt-in to Chapter 154 under 28

U.S.C. § 2265; a state with a qualifying post-conviction procedure can opt-in under 28 U.S.C. § 2261. In a unitary review procedure, a petitioner is permitted "to raise, in the course of direct review of the judgment, such claims as could be raised on collateral attack." § 2265(a). In a post-conviction procedure, a petitioner can raise collateral claims after the conviction and sentence have been "upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes." § 2261(b).

*tency* for the appointment of such counsel.

28 U.S.C. § 2265(a) (emphases added).[4]

### C. *The quid pro quo*

In return for meeting the statutory requirements of Chapter 154, a state is entitled to the following procedural advantages with respect to a federal habeas petition filed by one of its capital-sentenced prisoners: (1) the petition must be filed within 180 days of the termination of state court proceedings, 28 U.S.C. § 2263(a);[5] (2) the district court must render a final determination on the petition within 180 days of filing, § 2266(b)(1)(A); and (3) the court of appeals must render a determination on any appeal of the district court's determination within 120 days of the last responsive brief, § 2266(c)(1)(A).

This trade-off of procedural advantages in return for the appointment of competent counsel at the state and federal level creates a "quid pro quo" relationship. *See Bennett v. Angelone,* 92 F.3d 1336, 1342 (4th Cir.1996); *see also Lindh v. Murphy,* 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The Powell Committee, whose proposal Chapter 154 essentially codifies, *see Ashmus I,* 935 F.Supp. at 1055–56, stated the quid pro quo in these terms:

> [T]he Committee believes that provision of competent counsel for prisoners under capital sentence throughout both state and federal collateral review is crucial to ensuring fairness and protecting the constitutional rights of capital litigants.

4. Section 2261(c), which is expressly incorporated with respect to unitary review procedures by section 2265(c), provides in part:
   Any mechanism for the appointment, compensation, and reimbursement of counsel as provided in [here, section 2265(a)] must offer counsel to all State prisoners under capital sentence and must provide for the entry of an order by a court of record—
   (1) appointing one or more counsels to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer

135 Cong. Rec. S13471–04, S13481, S13482 (Judicial Conference of the United States Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, Committee Report (1989)) (Powell Committee Report).

### D. *California's Unitary Review Scheme*

The State of California adopted a unitary scheme of collateral review effective June 6, 1989. The scheme, which the State previously referred to as a "'comprehensive scheme of interlocking, cross-implementive provisions,'" *Ashmus I,* 935 F.Supp. at 1056, is comprised of the following provisions:

(1) California Government Code § 68511.5 (effective Jan. 1, 1984);

(2) California Rule of Court 76.5 (effective Jan. 1, 1985);

(3) Section 20 of the Standards of Judicial Administration Recommended by the Judicial Council (effective Jan. 1, 1985);

(4) Introductory Statement, California Court Rules (effective Jan. 1, 1992)

(5) California Penal Code § 1241 (enacted 1955);

(6) California Government Code § 68070 (effective as amended Oct. 3, 1977);

(7) California Supreme Court Statement of Policies Regarding Cases Arising from Judgment of Death (adopted and effective June 6, 1989);

(8) California Supreme Court Internal Operating Practices and Procedures, Sections XIII.A and XIV.A

or is unable competently to decide whether to accept or reject the offer[.]
28 U.S.C. § 2261(c).

5. Running of this 180–day clock can be tolled only by (1) the pendency of a petition for certiorari to the United States Supreme Court for direct review of the capital conviction; (2) the pendency of petitioner's first state petition for collateral review; and (3) certain other circumstances permitting an additional 30 days. *See* § 2263(b).

(adopted Summer 1985, revised December 1989 and in 1995);

(9) California Supreme Court Payment Guidelines for Appointed Counsel Representing Indigent Criminal Appellants (revised Sept. 19, 1990, and Dec. 22, 1993); and

(10) California Supreme Court Guidelines for Fixed Fee Appointment, on Optional Basis, to Automatic Appeals and Related Habeas Corpus Proceedings (effective Jan. 1, 1994).

In 1997, long after the completion of all of Ashmus' state proceedings, California revised the structure of its unitary review scheme. The state legislature adopted Chapter 2.1 (now Chapter 2.3) of title 8 of the California Government Code, *see* Cal. Gov't Code §§ 68660–68666 (West Supp. 1999) (effective Jan. 1, 1998), to create the California Habeas Resource Center. Section 68662 required the California Supreme Court to "offer to appoint counsel to represent all state prisoners subject to a capital sentence for purposes of state postconviction proceedings." § 68662. Section 68665 required the California Judicial Council and the California Supreme Court to "adopt, by rule of court, binding and

mandatory competency standards for the appointment of counsel in death penalty direct appeals and habeas corpus proceedings." § 68665. Accordingly, the Judicial Council and the California Supreme Court adopted California Rule of Court 76.6 (effective February 27, 1998) to implement the new statutory provisions. *See* Cal. R. Ct. 76.6 (West Supp. 1999).

## II. DISCUSSION

This court has jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(b). We review the district court's conclusions of law de novo, *see Velarde v. PACE Membership Warehouse, Inc.,* 105 F.3d 1313, 1318–19 (9th Cir. 1997), and its factual findings under the "clearly erroneous" standard, *see Campbell v. Wood,* 18 F.3d 662, 681 (9th Cir. 1994).[6]

■ California can invoke the advantages of Chapter 154 with respect to Ashmus' habeas petition only if it affirmatively establishes that it has satisfied each condition in the federal statute. *See Lindh v. Murphy,* 521 U.S. 320, 327, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Bennett v. Angelone,* 92 F.3d 1336, 1342 (4th Cir. 1996).

Chapter 154 applies to pending habeas petitions. *See* AEDPA, § 107(c), 110 Stat.

**6.** The State moves to certify two questions of law to the California Supreme Court pursuant to California Rule of Court 29.5. *See* Appellant's Mot. to Certify Questions of State Law to Cal. Sup.Ct. ("Motion"). We decline to do so.

The State seeks certification of (1) whether any or all of three state law measures have been adopted as "rules of court" pursuant to California state law: (a) section 20 of the Standards of Judicial Administration; (b) the California Supreme Court's Policies Regarding Cases Arising from Judgments of Death; and (c) the Payment Guidelines for Appointed Counsel. The State also seeks certification of (2) whether the Payment Guidelines violated California Penal Code section 1241 (which requires payment of a "reasonable sum for compensation and necessary expenses"). Questions (1)(c) and (2) are no longer relevant to this appeal because we do not address the question whether California's unitary review scheme compensates collateral counsel for "reasonable litigation expenses."

Questions (1)(a) and (1)(b) are relevant to this proceeding only because they relate to the meaning of the provision "rule of its court of last resort" in 28 U.S.C. § 2265(a). But

the question before this court is whether California is entitled to "opt-in" to Chapter 154; this is manifestly a question of federal statutory interpretation. The state court is in no better position than this court to interpret a federal statute—to the contrary. *See Micomonaco v. State of Wash.,* 45 F.3d 316, 322 (9th Cir. 1995). Moreover, resolution of the question posed by the State would not, in any event, "be determinative of a cause pending in the certifying court." Cal. R. Ct. 29.5(a)(2). We therefore decline to exercise our discretion to certify. *See Micomonaco,* 45 F.3d at 322.

The State relies on *Arizonans for Official English v. Arizona,* 520 U.S. 43, 78, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), for the proposition that the panel should not "indulge [t]he district court's assumptions" about California state law without first certifying to the California Supreme Court. That case is inapposite. It involved the application of a state, not a federal, provision. *See id.* at 76–77, 117 S.Ct. 1055. Moreover, it stated that there must be "[n]ovel, unsettled questions of state law" before certification is permitted. *Id.* at 79, 117 S.Ct. 1055. Neither of the questions posed by the State is novel, and therefore certification is not appropriate.

1214, 1226. California can opt-in to Chapter 154's expedited procedures, however, only if its mechanism for the appointment, compensation and payment of reasonable litigation expenses of collateral counsel is "established." *See* § 2265(a) ("establishes"). The question then becomes the relevant date: when must California have "established" its mechanism for the appointment of counsel in order to opt-in to Chapter 154 for the purpose of applying those expedited procedures to Ashmus' federal habeas petition?

The State contends that the relevant date is June 6, 1989, the effective date of the 1989 Supreme Court Policies and thus the date when Ashmus became entitled to the appointment of collateral counsel under California's unitary review scheme. Ashmus contends that the relevant date is March 4, 1987, the date on which direct appeal counsel was appointed for him and thus the date on which he would have been entitled to the appointment of collateral counsel had California's unitary review scheme been in place at that time. The district court concluded that the relevant date. was 1987, when Ashmus would have been entitled to collateral counsel. *See Ashmus II,* 31 F.Supp.2d at 1182. We need not decide which date is correct, because the text of 28 U.S.C. § 2265 plainly precludes California's opting-in in either case.

Prior to June 6, 1989, California had no scheme for the appointment of collateral counsel that could justify opting-in to Chapter 154. *See Ainsworth v. Calderon,* 138 F.3d 787, 790, *amended by* 152 F.3d 1223 (9th Cir.1998); *McDowell v. Calderon,* 107 F.3d 1351, 1355 n. 1, *amended by* 116 F.3d 364, *vacated in part on other* *grounds on reh'g en banc,* 130 F.3d 833 (9th Cir.1997), *cert. denied,* 523 U.S. 1103, 118 S.Ct. 1575, 140 L.Ed.2d 807 (1998). The State does not contest this point.

In addition, from June 6, 1989, until at least January 1, 1998 (the effective date of California's appointment statute), California's unitary review scheme did not comply with ·the eligibility requirements of Chapter 154 of the AEDPA.[7] During that period, as we will explain below, California (1) failed to establish its appointment mechanism "by rule of its court of last resort or by statute" as required by 28 U.S.C. § 2265(a); and (2) failed to adopt a "rule of court or statute [to] provide standards of competency for the appointment of such counsel" as also required by 28 U.S.C. § 2265(a). Thus, whether the relevant date is 1987, as claimed by Ashmus, or 1989, as urged by the State, California has not met the statutory burden set out in Chapter 154, and cannot now avail itself of the procedural advantages which that Chapter affords.[8]

A. *Absence of statute or rule of court establishing mechanism for appointment of collateral counsel*

To be eligible under Chapter 154, California's mechanism for the appointment of collateral counsel must be "establishe[d] by rule of its court of last resort or by statute." 28 U.S.C. § 2265(a). From 1989 to 1998, however, California's appointment mechanism was established in its 1989 Supreme Court Policies and Rule XIII (subsequently Rule XIV) of the Internal Operating Practices and Procedures (IOPPs) of the Supreme Court of California. *See* Cal. Court Rules, Vol. 23, Policy 3, at 141, 143–46. Neither of these authorities is a rule of court or statute. The 1989 Supreme Court Policies, as the name sug-

7. We do not address whether the 1998 amendments to California's unitary review scheme would render California eligible to opt-in to Chapter 154. As the district court correctly observed, this question is irrelevant to Ashmus' petition. *See Ashmus II,* 31 F.Supp.2d at 1184 n. 13.

8. The district court also held that the State was ineligible to opt-in to Chapter 154 because (1) the State did not provide for the timely appointment of counsel "upon" certain

statutory findings as required by 28 U.S.C. § 2261(c)(1), *see Ashmus II,* 31 F.Supp.2d at 1186–87; and (2) the State did not provide for compensation of collateral counsel's "reasonable litigation expenses" as required by 28 U.S.C. § 2265(a), *see Ashmus II,* 31 F.Supp.2d at 1188–90. We decline to address these questions here. Our conclusion that the State's attempt to opt-in suffers from two fatal deficiencies discussed below makes it unnecessary to rule on these additional issues.

gests, are policies—not rules of court or statutes.[9] So, too, with the IOPPs. Although the IOPPs are contained in a bound volume labeled "Court Rules," the Introduction to the IOPP draws a distinction between the IOPPs and "provisions of the California Constitution, Codes and Rules of Court, as well as numerous provisions of the decisional law." Cal. Court Rules, Vol. 23, Policy 3, at 133 & n.2.

In contrast to these latter authorities that are binding on their face, the IOPPs merely recite that they are "observed by the California Supreme Court in the performance of its duties." *Id.* at 133.

This distinction reinforces our conclusion that the IOPPs are not "rule[s] of court" as that term is used in Chapter 154. The State, however, points to the decision of the Supreme Court of California in *In re Sanders*, 21 Cal. 4th 697, 981 P.2d 1038 (1999), decided after briefing in this appeal. There the California Supreme Court said that appointment of counsel in capital state collateral proceedings "has long been this court's practice," *id.* at 717, 981 P.2d at 1051. It was first announced "as a matter of policy" in *In re Anderson*, 69 Cal.2d 613, 633, 447 P.2d 117, 131 (1968). The *Sanders* opinion states that the California Court's "practice is currently memo-

rialized in three places" in the IOPPs. *Sanders*, 21 Cal. 4th at 717, 981 P.2d at 1051. Finally, *Sanders* states that *Anderson*, the IOPPs, and the 1998 statute "all require" appointment of capital collateral counsel. *Id.* at 719, 981 P.2d at 1052.

Although these statements are of course conclusive as matters of state law, we do not view them as changing the nature of the IOPPs or the Court's policies into "rules of court" within the meaning of Chapter 154. We have no doubt that California's "practice" or "policy" has been to appoint collateral counsel in capital cases for many years, or that this practice or policy is "memorialized" in IOPPs or written Policies. *Sanders* now makes it clear that this practice or policy is a requirement of state law. But Chapter 154 requries that the particular mechanism for appointment of collateral counsel must be "establish[ed] by rule of its court of last resort or by statute." 28 U.S.C. § 2265(a).[10] Establishment by decision is not enough. The IOPPs and policies do not purport to be rules of court for the reasons that we have stated. A decision by the California Supreme Court to accord mandatory effect to a policy or practice established a requirement by decision and not by the terms of a "rule of its court."

**9.** We reject the State's invitation to read isolated references in the legislative history of the AEDPA as trumping the unambiguous meaning of the statute. *See* 137 Cong. Rec. S3191–02, S3214, S3221 (Comprehensive Violent Crime Control Act of 1991 Section–by–Section Analysis (1991)) (1991 Analysis) ("California, for example, has adopted a unitary review procedure for capital cases by rule of its supreme court."). Context reveals that Congress' point was that unitary review, as opposed to post-conviction review, was a legitimate collateral procedure, even though the Powell Commission had not addressed unitary review in its report. *See id.* In any event, the plain meaning of the statute and California's rules, policies, procedures, and policies control. *See* IOPPs, Cal. Court Rules, Vol. 23, Policy 3, at 133 & n.2; *see also Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) ("When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances."). Nor is the State aided by a comment from the State's attorney general that "[b]y rule of court, death row prisoners who file federal

habeas corpus petitions in California are entitled to the appointment of counsel upon request." 137 Cong. Rec. S8716–01, S8717 (1991). The attorney general's assertion says little about the intent of Congress in drafting Chapter 154, and even less about whether California has established a qualifying mechanism within the unambiguous meaning of the federal statute.

**10.** Until April 29, 1997, and despite multiple revisions, the IOPPs provided for the authorization and appointment of counsel only "after the termination of the party's state appeal." Cal. Court Rules, Vol. 23, Policy 3, at 141 (XIV.A.4) (West 1996). This phrasing stands in contradiction to the State's adoption of a unitary review scheme in 1989 and underscores the State's failure to provide a "clear mechanism that can be seen and relied upon by indigent capital defendants, rather than a loose collection of statutes and regulations which lack binding enforcement mechanisms and which may be subject to differing interpretations." *Wright v. Angelone*, 944 F.Supp. 460, 468 (E.D.Va.1996).

The State raises several objections to this conclusion, each of which we reject. The State contends that 28 U.S.C. § 2265(a) does not actually require the appointment mechanism to be embodied in a rule of court or statute, as long as the mechanism is "accomplished" by rule of court or statute. This claim has no support in the text. The statute is unambiguous: the State may opt-in to Chapter 154 only "if the State establishes by rule of its court of last resort or by statute a mechanism for the appointment, compensation, and payment" of collateral counsel. § 2265(a). We discern no basis or authority for the novel interpretation urged by the State, and the State itself provides none.[11]

The State also contends that Rule 76.5 and California Government Code § 68511.5 satisfy the federal statutory requirement. But neither Rule 76.5 nor section 68511.5 actually establishes a qualifying appointment mechanism for collateral appeals. Section 68511.5 merely directs the Judicial Council to "adopt rules of court regulating the selection of appointed counsel." Cal. Gov't Code § 68511.5. Rule 76.5 requires each appellate court to "adopt procedures for appointment of counsel in criminal cases," but does not itself contain procedures for the appointment of counsel. *See* Cal. R. Ct. 76.5(a). Thus, even were we to overlook the fact that these two provisions contemplate the appointment of counsel on direct, and not collateral, appeal,[12] no interpretation of these provisions could support a conclusion that they "establish" a mechanism for the appointment, compensation and payment of collateral counsel.

The State of California has offered no evidence that, as of June 1989, it had established "by rule of its court of last resort or by statute" a mechanism for the appointment, compensation and payment of reasonable expenses for collateral counsel. On this ground alone, California is ineligible to opt-in to Chapter 154 with respect to Ashmus' federal habeas petition.

B. *Absence of statute or rule of court providing standards of competency for appointment of collateral counsel*

Chapter 154 requires that qualifying states must provide standards of competency in a rule of court. The statute and legislative history also require that such standards be mandatory and binding. California's unitary review scheme satisfies neither requirement.

■ The statute expressly states the first requirement: "The rule of court or statute must provide standards of competency for the appointment of such counsel." § 2265(a). The statute implicitly includes the second requirement: The competency standards must be binding and mandatory. *See id.* ("must provide standards"). As the district court correctly concluded, the legislative history demonstrates that Congress deemed the provision of competent counsel at all stages of collateral proceedings to be es-

---

11. We reject the suggestion by amicus curiae to interpret the differing language in 28 U.S.C. § 2261(b) and 28 U.S.C. § 2265(a) as a mere "scrivener's error." Congress could well have intended that an appointment mechanism for post-conviction review be established by "statute, rule of its court of last resort, or by another agency authorized by State law," § 2261(b), while limiting the establishment of such a mechanism for unitary review to "rule of its court of last resort or by statute," § 2265(a). In any event, the statute is unambiguous, and we have no need to search the legislative history for hidden mean-

ing. *See Demarest,* 498 U.S. at 190, 111 S.Ct. 599.

12. Both section 68511.5 and Rule 76.5 refer to "criminal appeals," not post-conviction proceedings. Moreover, section 68511.5 refers to the "appointment of counsel in all *appellate districts,*" which is a clear reference to the intermediate state appellate courts, rather than the state supreme court. § 68511.5 (emphasis added); *see also* Cal. Const. art. VI, § 3 ("The Legislature shall divide the State into districts each containing a court of appeal with one or more divisions.").

sential to the quid pro quo of Chapter 154. *See* Powell Committee Report, 135 Cong. Rec. at S13483 ("But to avail itself of [now Chapter 154's] more structured habeas corpus review procedures, a State would have to establish a system for the appointment and compensation of competent counsel throughout all stages of state post conviction review."); *see also Ashmus I*, 935 F.Supp. at 1073. The requirement of competent counsel at all stages of the proceedings would be eviscerated if the decision to follow the standards were left to the discretion of a court or guideline administrator. Moreover, in the absence of mandatory standards, federal courts would be unable to evaluate the adequacy of a state's appointment mechanism without examining the competency of individual counsel. This approach would necessitate a case-by-case analysis to determine whether a state is entitled to the benefits of Chapter 154, a piecemeal consequence that Congress sought to avoid. *See* Powell Committee Report, 135 Cong. Rec. at S13483; *see also Ashmus I*, 935 F.Supp.

at 1073–74.[13] We conclude, as have other courts that have examined the issue,[14] that a state's competency standards must be mandatory and binding if the State is to avail itself of Chapter 154.

■ California's competency standards for collateral counsel are set out in section 20 of the Standards of Judicial Administration Recommended by the Judicial Council. *See* Cal. Court Rules, Vol. 23, pt. 2, at 636, 679–80, § 20 (West 1996).[15] Section 20 is not a rule of court or statute, however. It is neither mandatory nor binding. Section 20 uses hortatory language—"should." *See* § 20(a) ("Each appellate court ... should follow the guidelines in this section ...."); § 20(c) ("The Supreme Court should maintain a list of attorneys for appointment in death penalty cases...."). Section 20 is thus a " 'recommendation[ ] to the courts' " made under the Judicial Council's authority to make recommendations under the state constitution; it is not a rule of court. Introductory Statement, Cal. Court Rules, Vol. 23, pt. 1, at 4 (West 1996).[16] Also, as a recommendation to the

13. Central to the efficacy of [the Chapter 154] scheme is the development of standards governing the competency of counsel chosen to serve in this specialized and demanding area of litigation.... If prisoners under capital sentence in a particular State doubt that a State's mechanism for appointing counsel comports with [section 2261(b) or section 2265(a) ], the adequacy of the system—as opposed to the competency of particular counsel—can be settled through litigation.

Powell Committee Report, 135 Cong. Rec. at S13483. Counsel must be required to meet competency standards if the adequacy of the system, as opposed to the competency of individual counsel, is to be evaluated by the courts. "A state does not qualify under Chapter 154 by setting forth competency standards that the state can completely disregard when appointing counsel." *Ashmus v. Calderon*, 123 F.3d 1199, 1208 (9th Cir.1997), *rev'd for lack of a case or controversy*, 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998).

14. *See Mata v. Johnson*, 99 F.3d 1261, 1267 (5th Cir.1996) (requiring "specific, mandatory standards for capital habeas counsel"), *vacated in part on other grounds*, 105 F.3d 209 (5th Cir.1997); *Wright*, 944 F.Supp. at 467 (re-

quiring "binding or mandatory standards of competency"); *see also Oken v. Nuth*, 30 F.Supp.2d 877, 880 n. 3 (D.Md.1998) (state must have and "apply" competency standards).

15. Section 20 is entitled "Guidelines for appointment of counsel in criminal appeals."

16. The Introduction distinguishes between rules of court and standards. *See* Introductory Statement, Cal. Court Rules, Vol. 23, pt. 1, at 4 (West 1996) ("This Introductory Statement is intended to clarify the usual meaning and intent of rules, standards, and orders, and to distinguish among them."). Whereas rules of court are promulgated under the Judicial Council's constitutional authority to " 'adopt rules for court administration,' " standards are promulgated under the Judicial Council's constitutional authority to " 'make recommendations to the courts.' " *Id.* (quoting Cal. Const. art. VI, § 6). Standards use the nonmandatory "should" and, unlike rules of court, are considered nonbinding. *See id.* ("Even though courts are not obligated to comply with these recommendations, goals, and guidelines, courts should consider them as highly desirable standards of good practice.").

Court, section 20 cannot be considered mandatory or binding. *See id.* ("The nonmandatory nature of the standards is indicated by the use of 'should' instead of the mandatory 'shall.'"). Section 20 is not, therefore, a qualifying competency standard within the meaning of 28 U.S.C. § 2265(a), and California is not eligible to opt-in to Chapter 154 with respect to Ashmus' petition. The State raises several objections, all of which are unavailing.[17] The State contends that section 20 is a rule of court because it is promulgated under California Government Code § 68070, which authorizes promulgation of local rules. But California has presented no evidence that section 20 was actually promulgated under that code section. Moreover, the State's argument is directly contradicted by the Introductory Statement to the California Court Rules, which explains that section 20 is not a rule of court at all.

The State also urges that Rule 76.5 makes section 20 a rule of court and therefore mandatory. To be sure, Rule 76.5 is a rule of court, but it says only that the court shall "consider" the section 20 guidelines, and the guidelines themselves require nothing. *See* Cal. R. Ct. 76.5(b); *see also Wright,* 944 F.Supp. at 466 (concluding that "guidelines for establishing [competency] standards [that provide] ... no indication how many of the delineated criteria MUST be met" do not satisfy 28 U.S.C. § 2261(b)). Also, under California's unitary review scheme the section 20 guidelines need not be applied in any form if the court contracts with an "administrator" to supervise the appointed counsel, *see* section 20(d), and the State points to no standards of competency for such an administrator. Rule 76.5 does not aid the State.

The State also claims that section 20 has become binding (and a rule of court) because it has been adopted by the California Supreme Court. The State presents some evidence that the section 20 considerations have been used by the California Supreme Court as an "initial measure of the experience and qualifications of private attorneys applying for appointment to a capital appeal." *Ashmus II,* 31 F.Supp.2d at 1192 (internal quotation marks omitted). We agree, however, with the district court; the California Supreme Court's compliance in practice with a hortatory guideline does not meet the federal statutory command. *See id.*[18]

■ Finally, the State argues that a qualifying state's competency standards need not be contained in a rule of court or statute as long as they are provided for in one, and that California Government Code § 68511.5 and California Rule of Court 76.5 so provide. We decline to read the statute ("The rule of court or statute must provide standards of competency") to encompass a rule of court or statute that merely authorizes the promulgation of competency standards in some other instrument. Such an interpretation is contrary to the unambiguous meaning of the statute.[19] But even if we were to adopt the construction urged by the State, it would not affect our analysis. Rule 76.5 and section 68511.5 do not require the promulgation of competency standards; at best, they merely permit them. *See* Cal. Gov't Code § 68511.5 (requiring only the adoption of "procedures for the appointment of counsel in all appellate districts");

17. The district court ably and exhaustively discussed each of the State's contentions. *See Ashmus II,* 31 F.Supp.2d at 1190–93 (also incorporating analysis from *Ashmus I,* 935 F.Supp. at 1072–74).

18. The State suggests that the district court's requirement of mandatory competency standards is inconsistent with "[t]he latitude afforded to the states in defining specific standards of counsel competence." 1991 Analysis, 137 Cong. Rec. at S3220. Not so. We do not address here the "specific standards" adopted by the State of California; we address only whether those standards are mandatory or hortatory.

19. The conclusions of other courts that have examined the issue contradict the State's view. *See Mata,* 99 F.3d at 1267; *Zuern v. Tate,* 938 F.Supp. 468, 471 (S.D.Ohio 1996).

Cal. R. Ct. 76.5(a) (requiring only the adoption of "procedures for the appointment of counsel in criminal cases"). Moreover, section 68511.5 contemplates the appointment of counsel on direct, not collateral, appeal. *See supra* note 12. Finally, the substantive competency guidelines actually promulgated by the State (and contained in section 20) are recommendations to the courts only, and cannot satisfy the statutory requirement that such standards be mandatory and binding.

We therefore reject the State's argument that the unitary review scheme that it adopted in June 1989 meets the Chapter 154 requirement that "[t]he rule of court or statute must provide standards of competency for the appointment of [collateral] counsel."

## CONCLUSION

The State of California seeks to opt-in to the procedural advantages of Chapter 154 of the AEDPA with respect to Troy A. Ashmus' petition for federal habeas corpus. The State has not demonstrated, however, that it has complied with the unambiguous requirements of that statute. During all times relevant to this appeal, and at least until 1998, California failed to establish "by rule of its court of last resort or by statute" a mechanism for appointment and compensation of collateral counsel for its death-sentenced prisoners. California also failed to provide mandatory and binding standards of competency for collateral counsel in a "rule of court or statute."

The order of the district court is

AFFIRMED.