**Dwayne Allen WRIGHT, Petitioner,**

v.

**Ronald J. ANGELONE, Director of the Virginia Department of Corrections, Respondent.**

**Action No. 2:96cv830.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 22, 1996.

Charles Everett Malone, Clark & Stant, Virginia Beach, VA, Douglas Fredericks, Norfolk, VA, for Dwayne Allen Wright.

Robert Quentin Harris, Office of Attorney General, Richmond, VA, for Ronald J. Angelone.

*OPINION*

MILLER, United States Magistrate Judge.

On August 14, 1996, Petitioner Dwayne Allen Wright filed a Motion for the Appointment of Counsel and for Stay of Execution. Petitioner's execution, which was scheduled to occur on August 23, 1996, was stayed by Order of this Court entered on August 17, 1996. On that same date, this matter was referred by United States District Judge Henry C. Morgan, Jr. to United States Magistrate Judge Tommy E. Miller, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 28 of the Rules of the

United States District Court for the Eastern District of Virginia. An Order was entered on September 10, 1996, appointing Douglas Fredericks as lead counsel and Charles Malone as co-counsel for the Petitioner.

On October 15, 1996, oral arguments were heard before this Court to determine the applicability of Section 107 of the Antiterrorism and Effective Death Penalty Act of 1996. This Court must decide whether Virginia has met the opt-in provisions outlined in Section 107, which would entitle Virginia to certain habeas benefits.

At this time, no habeas petition has been filed in this matter. This Court must decide the applicability of Section 107 at this preliminary stage, however, to determine the pertinent deadlines for filing the petition for writ of habeas corpus and the appropriate responses. If Section 107 does apply, this case would be subject to an expedited review process which would significantly affect the filing requirements in this matter.

## Analysis

### Section 107 of the Antiterrorism and Effective Death Penalty Act

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214 (April 24, 1996) (hereinafter "AEDPA"). Title I of the AEDPA, entitled Habeas Corpus Reform, creates a new Chapter 154 of Title 28 of the United States Code. Within Chapter 154 are several specific provisions dealing with capital defendants. *Id.,* § 107. Such provisions are applicable only if states meet the "opt-in" requirements set forth in Section 107.

Section 107 applies to all cases pending on or after the enactment date of April 24, 1996. AEDPA, tit. I, § 107(c). As no habeas petition has yet been filed in this case, Section 107 of the AEDPA would apply if Virginia meets the opt-in requirements set forth in the statute.

■ Chapter 154 provides for an expedited review procedure by which state courts are given more deference in the federal habeas review process. A state may qualify for the benefits of Chapter 154 if it qualifies under one of two "opt-in" provisions: [1] "unitary review" procedures under § 2265; or [2] "post-conviction" procedures under § 2261. A unitary review procedure allows a person under a sentence of death to raise on direct review of the judgment such claims that could be raised on collateral attack. 28 U.S.C. § 2265. Virginia does not have such a unitary review procedure, and therefore the analysis must focus on whether Virginia meets the second opt-in requirement.

To qualify for habeas benefits under the "post-conviction" prong of the opt-in provisions, a state must establish a mechanism which provides for the appointment, compensation, and reimbursement of competent counsel for all indigent capital defendants in its state post-conviction proceedings. 28 U.S.C. § 2261. More specifically, a state must meet all four of the following criteria:

1. The State must establish by statute, rule of its court of last resort, or other agency authorized by state law, a 'mechanism' for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in state post-conviction proceedings brought by indigent capital defendants. *See* § 2261(b).

2. Such mechanism must provide standards of competency for the appointment of such counsel. *See* § 2261(b).

3. Such mechanism must affirmatively offer counsel to all state prisoners under capital sentence. *See* § 2261(c).

4. Such mechanism must provide for the entry of a court order either appointing counsel to each capital defendant, or explaining that such an appointment was not made on the basis that a defendant was not indigent or rejected the offer of counsel with an understanding of the legal consequences. *See* § 2261(c).

*Satcher v. Netherland,* Action No. 3:95cv261, —— F.Supp. —— (E.D.Va. Oct. 8, 1996). Virginia does provide for counsel in post-conviction proceedings, but this court must determine whether Virginia meets the specific requirements of Section 107 of the AEDPA to the extent that it would be entitled to the habeas benefits.

*Time for Adjudging the Adequacy
of Virginia's System*

Since July 1, 1992, Virginia has had in effect a system which requires the appointment of counsel for indigent petitioners in post-conviction proceedings. Va.Code §§ 19.2–163.7, –163.8 (Michie Supp.1995); Virginia Public Defender Commission, Standards for the Qualifications of Appointed Counsel in Capital Cases (1992); *see also Bennett v. Angelone*, 92 F.3d 1336, 1342 (4th Cir.1996). Between July 1, 1992 and June 30, 1995, the appointment of counsel in the post-conviction process was made upon request by the petitioner. Va.Code § 19.2–163.7 (prior to 1995 amendment). As of July 1, 1995, such appointment is now automatic.[1]

Respondent argues that this Court should analyze Virginia's system as it exists today, rather than as it was when Wright's state counsel was actually appointed, to determine whether it meets the requirements of Section 107. To engage in such an analysis would be unjust, as it would potentially allow a state to enjoy the benefits of an expedited habeas review because its current system is in compliance, even though the actual petitioner may not have enjoyed the protections of the post-conviction procedures. Section 107 was intended to afford states a certain amount of deference through the expedited review process on the federal side, but only if such states employ certain protections to indigent capital defendants. This statutory scheme envisions a quid pro quo arrangement "under which states are accorded stronger finality rules on federal habeas review in return for strengthening the right to counsel for indigent capital defendants." *Hill v. Butterworth*, 941 F.Supp. 1129, 1134 (N.D.Fla.1996). Surely Congress did not in-

tend for a state to reap the benefits of the statute unless the petitioner whose case would be subject to the expedited review also enjoyed the "quid pro quo benefits" of the state's enhanced right to counsel provisions during the post-conviction review process. *See Ashmus v. Calderon*, 935 F.Supp. 1048, 1057 (N.D.Cal.1996).

Whether a state's system satisfies the requirements of Section 107 should be determined by examining the system as it existed at the time a petitioner first received appointment of counsel in the post-conviction process. It is at this time that a petitioner is first subject to the state's procedures, and would therefore be entitled to enjoy the protections of the state's system. To analyze a state's system at any later date would prejudice the petitioner whose case might be subject to the expedited review.

The record in this case does not indicate when Wright's state habeas petition was filed, but it does indicate when counsel was appointed to represent Wright in the state habeas corpus proceedings. Respondent's Exhibit A is a court order dated June 8, 1995, appointing Andrew F. Carroll, Esquire, as Wright's court appointed counsel in the state habeas corpus process. (Resp't.Ex. A). This Court will evaluate Virginia's post-conviction procedures as they existed on June 8, 1995, in determining whether Virginia meets the requirements of Section 107 of the AEDPA.[2]

*The Adequacy of Virginia's System for the
Appointment, Compensation, and Reimbursement of Competent Counsel*

The adequacy of Virginia's post-conviction procedures was recently addressed in the

---

1. Va.Code § 19.2–163.7 reads as follows:

 **Counsel in capital cases.** In any case in which an indigent defendant is charged with a capital offense, the judge of the circuit court, upon request for the appointment of counsel, shall appoint one or more attorneys from the list or lists established by the Public Defender Commission pursuant to § 19.2–163.8 to represent the defendant at trial and, if the defendant is sentenced to death, on appeal. If the sentence of death is affirmed on appeal, the court shall, *within thirty days after the decision of the Supreme Court of Virginia,* appoint counsel from

the same list, or such other list as the Commission may establish, to represent an indigent prisoner under sentence of death in a state habeas corpus proceeding. The Attorney General shall have no standing to object to the appointment of counsel for the petitioner.
 The 1995 amendment substituted the italicized language for "upon request" in the second sentence and added the third sentence.

2. Virginia's system does not differ dramatically between June 8, 1995 and as it stands today, so the analysis is essentially the same.

Richmond Division of the Eastern District of Virginia in *Satcher v. Netherland,* Action No. 3:95cv261, —— F.Supp. ——. In the *Satcher* opinion, Judge Payne found that Virginia did not meet three of the four opt-in requirements of the AEDPA, and therefore was not entitled to the habeas benefits outlined in that statute. The undersigned agrees that Virginia does not qualify under the post-conviction provisions of Section 107, but disagrees with a portion of Judge Payne's analysis.

### 1. Virginia does not have a mechanism for the appointment, compensation and reimbursement of counsel as contemplated by § 2261(b).

Section 2261(b) states that Chapter 154 applies only if a state meets certain qualifications:

> This chapter is applicable if a State establishes by statute, rule of its court of last resort, or by another agency authorized by state law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

28 U.S.C. § 2261. Since July 1, 1992, Virginia has had in place a statutory scheme which provides for the appointment of counsel to represent indigent capital petitioners in state post-conviction proceedings. Va. Code § 19.2–163.7, –163.8. Neither party contends that Virginia fails to appoint counsel in such cases, yet the language of § 19.2–163.7 as it existed on June 8, 1995 was such that provision of counsel occurred only upon request by the petitioner. In fact, Respondent notes in its brief that appointment of counsel was made in response to Wright's motion requesting such on May 25, 1995. Accordingly, the mechanism itself did not compel the appointment of counsel, as required by § 2261. Although neither party

argues that indigent capital defendants in Virginia have gone unrepresented in state habeas proceedings, the Court nonetheless finds that the statute, as it existed on June 8, 1995, fails to meet the requirements of § 2261(b) in this respect. Section 2261(b) contemplates a "mechanism" by which the state is *required* to appoint counsel in *all* cases involving indigent capital defendants, not only in those cases where the petitioner has the acumen to request court-appointed counsel.

Even if § 19.2–163.7 satisfied the appointment of counsel provision (as it now does after the 1995 amendment), the statute still fails to meet the other requirements of compensation and payment of reasonable litigation expenses for such counsel. The language of Va.Code § 19.2–163.7 (*supra* n. 1) merely provides for the appointment of counsel. There is no mention of compensation for appointed counsel in the statute. Accordingly, Virginia fails to comply with Section 107's requirement of a comprehensive mechanism for the appointment, compensation, and payment of expenses in post-conviction proceedings.

The Fourth Circuit recently noted that "the Virginia statutes and regulations do not specifically provide for compensation or payment of litigation expenses of appointed counsel, as § 107 requires." *Bennett,* 92 F.3d at 1342 n. 2. In *Satcher,* the court held that Virginia's current system of compensating court-appointed counsel fell short of meeting the requirements of Section 107 of the AEDPA. *Satcher,* Action No. 3:95cv261, —— F.Supp. ——. Judge Payne held that the AEDPA requires a "formal, institutionalized commitment to the payment of counsel and litigation expenses," and that this requirement could only be satisfied by strict, rather than substantial, compliance. *Id.* This Court agrees with that analysis, and finds that Virginia's current system for compensation and payment of expenses is not sufficient for purposes of Section 107 of the AEDPA.

Respondent argues that Virginia meets the requirements of the AEDPA through The Virginia Appropriations Act, which provides that "[t]he state's share of expenses incident

to the prosecution of a petition for a writ of habeas corpus by an indigent petitioner, including payment of counsel fees as fixed by the Court … shall be paid upon receipt of an appropriate order from circuit court." Wright argues several reasons as to why this provision is inadequate for purposes of Section 107 of the AEDPA, but this Court finds most persuasive the fact that there is no set 'mechanism' for the payment of counsel. Section 107 clearly states that Chapter 154 is applicable only if a state establishes "a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in state postconviction proceedings …" 28 U.S.C. § 2261(b). This requirement would make sense only if it were a comprehensive, all inclusive scheme upon which both indigent capital defendants and court-appointed counsel alike could rely. Virginia has no statute, rule or any other mechanism which *requires* the payment of counsel's fees and reasonable litigation expenses in state habeas proceedings.[3]

▮ Although the Appropriations Act provides the authority for payment of habeas counsel, it is lacking in the clear guidance compelled by Section 107. Respondent's own exhibits clearly indicate that appointed counsel in habeas cases in Virginia are unclear as to the procedures they must follow to receive compensation for their work, as well as which court even has jurisdiction over such matters.[4] As the court noted in *Satcher*, Congress chose to bestow the benefits of an expedited review process only if "the State made an affirmative, institutionalized, formal commitment to provide a post-conviction review system which Congress considered to be 'crucial to ensuring fairness and protecting the constitutional rights of capital litigants.' " *Satcher*, Action No. 3:95cv261, ——

F.Supp. ——, *citing* Ad Hoc Committee of the Judicial Conference on Federal Habeas Corpus in Capital Cases, 45 CRIM.L.REP. (BNA) 3239, 3240 (Sept. 27, 1989).

Virginia has not established a single mechanism which affirmatively provides for the appointment, compensation and payment of expenses for appointed counsel in cases of indigent capital defendants in the state habeas process. Although Virginia has in place various provisions which provide for counsel in the state habeas process, it is insufficient to satisfy the requirements of Section 107. Respondent's piecemeal attempt to pull together the various provisions and argue that this collection satisfies the "mechanism" required by Congress in Section 107 is unpersuasive. Congress intended for states to affirmatively create systems that satisfy the requirements of Section 107, rather than engage in post hoc rationalizations for existing measures. *Ashmus*, 935 F.Supp. at 1072. Accordingly, this Court finds that Virginia does not satisfy the first requirement of the opt-in provisions of Section 107.

## 2. Virginia has not established standards of competency for the appointment of counsel in post-conviction habeas proceedings as required by § 2261(b).

▮ Section 107 of the AEDPA also requires that a state establish standards of competency for the appointment of counsel in state habeas proceedings. This requires that a specific mechanism for competent counsel in all post-conviction habeas proceedings involving indigent capital defendants be established. Judge Payne in *Satcher* found that Virginia *does* meet the opt-in requirements under Section 107 for establishing standards of competency. *Satcher*, Action No. 3:95cv261, —— F.Supp. ——. However, the

---

3. Virginia Code § 19.2–163 authorizes the payment of fees and expenses for counsel appointed to represent indigent defendants at *trial* and on *direct appeal*. There is no mention of compensation for court-appointed counsel in state habeas proceedings.

4. Respondent's Exhibit C consists of letters, time sheets, and requests for payment from various court appointed counsel in habeas proceedings. An excerpt from a letter dated November 29,

1995 from an attorney appointed to represent Calvin Eugene Swann in his habeas proceedings reads as follows:

> If jurisdiction for payment is with the Supreme Court, I would respectfully request payment. If there are some procedures I need to follow other than what I have already done to properly request payment, I would greatly appreciate it if you would let me know so that I can submit a proper request.

undersigned finds that Virginia has not established standards of competency for court-appointed counsel to the extent contemplated by Section 107.

On the issue of standards of competency, this Court is faced with a question of statutory interpretation. The first part of § 2261(b) requires that the mechanism for the appointment and compensation of counsel be established by "statute, rule of its [state's] court of last resort, or by another agency authorized by state law." 28 U.S.C. § 2261(b). The last sentence of § 2261(b) states "[t]he rule of court or statute must provide standards of competency for the appointment of such counsel." *Id.* The latter portion of § 2261 makes no reference to the ability of an agency authorized by state law to establish the standards of competency. Petitioner urges this Court to construe the variation in the language to suggest that delegation of the promulgation of standards is not permitted by Section 107, and that such standards of competency must be set by rule of court or statute. *See Ashmus,* 935 F.Supp. at 1072.

 It would be entirely too formalistic for this Court to assume that Congress did not intend for the standards of competency to be established by an agency authorized by state law, even though such an agency could provide the mechanism for the appointment and compensation of court-appointed counsel. As the court in *Satcher* notes, there is no obvious explanation for the omission, and it could easily have been an oversight in the drafting process. *Satcher,* Action No. 3:95cv261, —— F.Supp. ——. A court's examination of statutory language is guided not by a single sentence or phrase, but by the provisions of the whole law, as well as its object and policy. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987), *quoting Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 358, 93 L.Ed.2d 216 (1986). To infer an irrational scheme from the language of a statute would show little respect for the legislators who enacted the law. *Things Remembered, Inc. v. Petrarca,* —— U.S. ——, ——, 116 S.Ct. 494, 500, 133 L.Ed.2d 461 (1995). Accordingly, this court must evaluate § 2261(b) as a whole in an effort to discern the true intent behind the statute.

 The court in *Satcher* determined that "[t]he two sentences can be harmonized to further the obviously stated intent of the Act by reading Section 2261(b), as a whole, to mean that, where a state statute provides reasonable guidance to a state agency respecting competency standards and then vests the agency with the authority to develop more specific standards, Section 2261(b) is satisfied." *Satcher,* Action No. 3:95cv261, —— F.Supp. ——. While the *Satcher* court argues that this is what Virginia has done, this Court disagrees. The establishment of standards of competency may be delegated to an agency authorized by state law, and although Virginia has attempted to do just that, the qualifications are not sufficient to satisfy Section 107.

Virginia Code § 19.2–163.8 authorizes the Public Defender Commission to develop standards for the appointment of counsel in capital cases:

> A. The Public Defender Commission, in conjunction with the Virginia State Bar, shall adopt standards for the appointment of counsel in capital cases, which take into consideration, to the extent practicable, the following criteria: (i) license or permission to practice law in Virginia; (ii) general background in criminal litigation; (iii) demonstrated experience in felony practice at trial and appeal; (iv) experience in death penalty litigation; (v) familiarity with the requisite court system; (vi) experience in death penalty litigation; and (vii) demonstrated proficiency and commitment to quality representation.

Va.Code § 19.2–163.8. Clearly these are not standards for competency for court-appointed counsel as envisioned by Section 107. Rather, these are guidelines for establishing such standards, and very loose guidelines at best. There is absolutely no indication how many of the delineated criteria MUST be met, if any. The statute itself states that the Public Defender Commission must consider the listed criteria, but only "to the extent practicable." This is insufficient for purposes of Section 107.

The standards established by the Public Defender Commission are also deficient. There is no set requirement that court-appointed counsel have habeas experience. As Petitioner points out, an attorney who has never handled a state habeas petition would be qualified under the Commission's standards if he was familiar with habeas practice. The Commission fails to define the extent of "familiarity" required to handle a capital habeas case. Moreover, *there is no requirement that counsel have had any experience with capital cases.*[5] Finally, there is no mechanism built into the standards which assure that appointed counsel meet the specified qualifications. Such standards are grossly inadequate, and fail to satisfy the requirements of section 107.

■ Under the AEDPA, it is crucial that states provide competent, qualified attorneys to represent indigent capital defendants. The importance of this requirement is painstakingly obvious in § 2261(e), which prohibits the ineffectiveness or incompetence of counsel during State or Federal post-conviction proceedings from being the grounds for relief in a proceeding arising under § 2254. 28 U.S.C. § 2261(e). In *Hill v. Butterworth,* the Northern District of Florida found that simply requiring court-appointed counsel to be members in good standing of the Florida Bar with not less than two years of experience with criminal law was not an "adequate standard of competency for purposes of "opting-in" to Chapter 154." *Hill,* 941 F.Supp. at 1142. A state cannot satisfy the requirements of Section 107 unless the state imposes binding or mandatory standards of competency, and requires counsel to have experience and demonstrated competence in bringing habeas petitions. *Ashmus v. Calderon* at 1072.

Although Virginia has taken steps to provide standards of competency for court-appointed counsel, such standards fail to adequately ensure that only competent, qualified counsel will be appointed to represent indigent petitioners in state habeas proceedings. Not only are the statutory guidelines in Virginia inadequate, but the standards set by the agency so authorized in Virginia are equally insufficient to satisfy Section 107. Until Virginia establishes a mechanism which clearly and succinctly defines how counsel are to be appointed and the method by which they are to be compensated, as well as imposes mandatory standards of competency, it will not enjoy the habeas benefits of Section 107 of the AEDPA.

### 3. Virginia fails to satisfy the final two opt-in requirements of section 107: affirmative provision of counsel and entry of order reflecting outcome of such offer of counsel.

Section 2261(c) of the AEDPA requires states to affirmatively offer counsel to *all* state prisoners under capital sentence. 28 U.S.C. § 2261(c). It also requires the entry of an order either appointing counsel to each indigent capital defendant, or explaining that such an appointment was not made because the defendant [1] was not indigent; [2] rejected the offer of counsel with an understanding of the legal consequences; or [3] was unable competently to decide whether to accept or reject the offer. *Id.*

■ As discussed above, the Virginia statute as it existed at the time Wright's state habeas counsel was appointed did not provide for the automatic offer of counsel to all indigent capital defendants. *Supra* notes 1 and 2 and accompanying text. The court in *Satcher* addressed the inadequacy of Virginia's system in its failure to affirmatively

---

5. The standards require that "lead counsel" have at least *one* of the following qualifications, as well as "possess familiarity with habeas corpus practice:
 i. experience as lead counsel in the defense of at least one capital case;
 ii. experience as co-counsel in the defense of at least two capital cases;
 iii. experience as 'lead counsel' (or as lead prosecutor) in at least five felony jury trials in Virginia courts involving crimes of vio-

lence which carry, upon conviction, a minimum sentence of at least five years imprisonment.
*Standards for the Qualifications of Appointed Counsel in Capital Cases,* February 22, 1992. The qualification of experience with capital cases can be avoided if an attorney has experience with felony jury trials, yet it is clear to this Court that capital cases are unique, not only in the punishment but in the habeas process.

468

offer competent post-conviction counsel to all prisoners sentenced to death. *Satcher*, Action No. 3:95cv261, —— F.Supp. ——. The undersigned agrees with the Judge Payne's analysis in that portion of the *Satcher* opinion, and accordingly finds that Virginia has failed to meet the final opt-in requirements of Section 107 of the AEDPA.

### Conclusion

Although Virginia has established a system for the provision of counsel for indigent defendants in state habeas proceedings, Virginia does not satisfy the opt-in provisions outlined in 28 U.S.C. § 2261. Congress intended for states to establish a clear mechanism that can be seen and relied upon by indigent capital defendants, rather than a loose collection of statutes and regulations which lack binding enforcement mechanisms and which may be subject to differing interpretations. It is no surprise that Virginia does not comply with § 2261, since the Virginia General Assembly has not met since Congress enacted § 2261 and the General Assembly could not have anticipated the details of this long debated amendment to the habeas law. However until Virginia develops a comprehensive mechanism which meets the qualifications outlined in § 2261, the habeas amendments in Chapter 154 of the AEDPA will not apply to capital cases in Virginia.