# THE ATTORNEY GENERAL'S AUTHORITY IN CERTIFYING WHETHER A STATE HAS SATISFIED THE REQUIREMENTS FOR APPOINTMENT OF COMPETENT COUNSEL FOR PURPOSES OF CAPITAL CONVICTION REVIEW PROCEEDINGS

*Statutory provisions originally enacted as section 107(a) of the Antiterrorism and Effective Death Penalty Act of 1996, and now codified as chapter 154 of title 28, may be construed to permit the Attorney General to exercise his delegated authority to define the term "competent" within reasonable bounds and independent of the counsel competency standards a State itself establishes, and to apply that definition in determining whether to certify that a state is eligible for special procedures in federal habeas corpus proceedings involving review of state capital convictions.*

*If the Attorney General chooses to establish a federal minimum standard of counsel competency that state mechanisms must meet in order to qualify for certification, he should do so in a manner that still leaves the States some significant discretion in establishing and applying their own counsel competency standards.*

*These statutory provisions may reasonably be construed to permit the Attorney General to evaluate a State's appointment mechanism—including the level of attorney compensation—to assess whether it is adequate for purposes of ensuring that the state mechanism will result in the appointment of competent counsel.*

December 16, 2009

## MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

Statutory provisions originally enacted as section 107(a) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 107(a), 110 Stat. 1214, 1221 (1996), and now codified as chapter 154 of title 28, United States Code, make expedited and other special procedures available to state respondents in federal habeas corpus proceedings involving review of state capital convictions. Amendments to chapter 154 enacted in 2006 condition the availability of these procedures on the Attorney General's certification that the State in question has met certain requirements. *See* USA PATRIOT Improvement and Reauthorization Act of 2005 ("PATRIOT Improvement Act"), Pub. L. No. 109-177, § 507(c)(1), 120 Stat. 192, 250 (2006). Specifically, a State is entitled to the special procedures only if the Attorney General determines, *inter alia*, that the State has established "a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent [capital] prisoners," and that the State "provides standards of competency for the appointment of counsel in [such] proceedings." 28 U.S.C. § 2265(a)(1)(A), (C) (2006); *see also id.* § 2261(b). Chapter 154 also authorizes the Attorney General to "promulgate regulations to implement the certification procedure." *Id.* § 2265(b).

Attorney General Mukasey published a final rule implementing this certification procedure on December 11, 2008. *See Certification Process for State Capital Counsel Systems*, 73 Fed. Reg. 75,327 (Dec. 11, 2008) (codified at 28 C.F.R. § 26.22 (2009)) ("2008 final rule"). That final rule afforded the Attorney General very limited discretion in exercising his

certification responsibilities.  In particular, the final rule required the Attorney General to apply the counsel competency standards established by the State itself in determining whether a State has established "a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of *competent* counsel," 28 U.S.C. § 2265(a)(1)(A) (emphasis added).  *See* 73 Fed. Reg. at 75,330-75,332.  In accord with this approach, the examples that the final rule offered to illustrate its application gave no indication that the Attorney General would have the authority to evaluate whether a state appointment mechanism could be expected to ensure the appointment of counsel who qualify as competent under a federal standard.  *See id.* at 75,339, *codified at* 28 C.F.R. § 26.22(d) (setting forth examples).  Indeed, the promulgated final rule expressly omitted the adjective "competent" found in the statutory requirement that the state mechanism provide for the appointment of "*competent* counsel."  *See* 28 C.F.R. § 26.22(a), 73 Fed. Reg. at 75,338.  Similarly, the examples offered in the rule regarding the compensation provided by the proposed state mechanism indicated that so long as a State did not require appointed counsel to act on a volunteer basis, the Attorney General would have no authority to determine whether a State's chosen compensation level would ensure the appointment of competent counsel.  *See* 28 C.F.R. § 26.22(b) (setting forth examples).

A federal district court enjoined the rule from taking effect until the Department of Justice provided an additional comment period of at least thirty days and published a response to any comments received during that period.  *See Habeas Corpus Res. Ctr. v. Dep't of Justice*, No. 08-2649, at 19-20 (N.D. Cal. Jan. 20, 2009) (order granting motion for preliminary injunction).  Acting Attorney General Filip thereafter instituted a new comment period that ended on April 6, 2009.  *See* 74 Fed. Reg. 6,131 (Feb. 5, 2009).  Many of the comments received during this period took issue with the final rule, with a number of the comments contending that the rule unduly cabined the Attorney General's discretion in exercising his certification authority.

You have asked our Office whether the relevant statutory provisions require you to follow the approach taken in the 2008 final rule.  After carefully considering this question, we conclude that they do not.  In our view, these provisions may be construed to permit you to exercise your delegated authority to define the term "competent" within reasonable bounds and independent of the competency standards a State itself establishes, and to apply that definition in making your certification determinations.  If you choose to establish a federal minimum standard of counsel competency that state mechanisms must meet in order to qualify for certification, however, you should do so in a manner that still leaves the States some significant discretion in establishing and applying their own counsel competency standards.  We further conclude that the statutory provisions in question may reasonably be construed to permit you to evaluate a State's appointment mechanism—including the level of attorney compensation—to assess whether it is adequate for purposes of ensuring that the state mechanism will result in the appointment of competent counsel.

*Certification of State Compliance with Requirements for*
*Appointment of Competent Postconviction Counsel in Capital Cases*

**I.**

As originally enacted in 1996, *see* AEDPA, Pub. L. No. 104-132, § 107(a), chapter 154 of title 28 entitled a State to the advantages of expedited federal habeas procedures in capital cases[1] if it "establishe[d] by statute, rule of its court of last resort, or by another agency authorized by State law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes." 28 U.S.C. § 2261(b) (2000). Chapter 154 further provided that the state "rule of court or statute must provide standards of competency for the appointment of such counsel." *Id.*

For almost a decade thereafter, federal courts, in the context of adjudicating federal habeas petitions brought by indigent state prisoners who had been sentenced to death, regularly engaged in an independent review of whether the state respondent had satisfied the competent counsel appointment preconditions set forth in chapter 154. *See, e.g., infra* at 10 n.5 & 14 n.8.

In 2006, however, Congress enacted section 507(c)(1) of the PATRIOT Improvement Act, Pub. L. No. 109-177. Pursuant to these amendments, a federal court entertaining a habeas petition by a state capital prisoner is required to implement the expedited procedures "if the Attorney General of the United States certifies that [the] State has established a mechanism for providing counsel in postconviction proceedings as provided in section 2265," and if "counsel was appointed pursuant to that mechanism, petitioner validly waived counsel, petitioner retained counsel, or petitioner was found not to be indigent." 28 U.S.C. § 2261(b) (2006).

The Attorney General certification procedure is set forth in 28 U.S.C. § 2265(a)(1). That paragraph provides that, upon request "by an appropriate State official," the Attorney General "shall determine" the following:

(A) whether the State has established a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death;

(B) the date on which the mechanism described in subparagraph (A) was established; and

(C) whether the State provides standards of competency for the appointment of counsel in proceedings described in subparagraph (A).

---

[1] Such advantages included, for example, a shorter statute of limitations for death-sentenced inmates filing their federal habeas petitions (six months instead of one year), strict deadlines for federal courts ruling on such petitions, limitations on stays of execution, and tightened procedural default rules. *See* 28 U.S.C. §§ 2262-2264, 2266 (2000); *Spears v. Stewart*, 283 F.3d 992, 1009 (9th Cir. 2002). When Congress amended chapter 154 in 2006, *see infra* at 3, it changed these advantages slightly in ways that are not relevant here.

These substantive requirements for Attorney General certification are, for all purposes relevant here, identical to the requirements for entitlement to expedited habeas procedures codified in the pre-2006 version of the statute. *See* 28 U.S.C. § 2261(b) (2000). The amended version of 28 U.S.C. § 2265(a)(3) (2006), unlike the pre-2006 law, further specifies that "[t]here are no requirements for certification or for application of [chapter 154] other than those expressly stated in [chapter 154]." And 28 U.S.C. § 2265(b) authorizes the Attorney General to prescribe regulations to implement the certification process.

Underscoring the changed role of the federal habeas courts in the new chapter 154 process, 28 U.S.C. § 2265(c) provides that the Attorney General's certification shall be reviewed by the United States Court of Appeals for the District of Columbia Circuit. *See* 152 Cong. Rec. S1620 (daily ed. Mar. 2, 2006) (statement of Sen. Kyl) (observing that review of certification is vested in the U.S. Court of Appeals for the District of Columbia Circuit, "which does not hear habeas petitions").

## II.

### A.

The preamble to the 2008 final rule makes clear that the rule was intended to constrain the Attorney General's certification authority quite significantly and that such a constraint was thought to be statutorily required. The preamble expressly rejected the suggestion in some of the comments received during the comment period that the Attorney General had the authority to give independent substantive content to the statutory requirements for certification to the extent those requirements were ambiguous. The preamble explained that such comments "reflected misunderstandings of the nature of the functions that chapter 154 requires the Attorney General to perform, and particularly, of the limited legal discretion that the Attorney General possesses under the statutory provisions." 73 Fed. Reg. at 75,327. Especially significant for present purposes, the preamble stated with respect to the term "competent counsel":

> The commenters are correct that the text of chapter 154 needs to be supplemented in defining competency standards for postconviction capital counsel, but mistaken as to who must effect that supplementation. *Responsibility to set competency standards for postconviction capital counsel is assigned to the states that seek certification.*

*Id.* at 75,331 (emphasis added).[2]

---

[2] One of the examples that the rule offered would seem to be in some tension with this basic approach. The rule indicated that, in setting competency standards, a State could not simply allow "any attorney licensed by the state bar to practice law" to represent indigent capital defendants in postconviction proceedings. 73 Fed. Reg. at 75,339, *codified at* 28 C.F.R. § 26.22(d) (example 4). The Rule did not explain why this "bar-licensed" standard would not suffice, nor why it might be different in kind from other minimal standards that a State could establish and still qualify for certification.

The preamble defended this conclusion primarily by referring to the relationship between section 2265(a)(1)(A) and section 2265(a)(1)(C). The former provision requires the Attorney General to determine whether a State has "established a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death." The latter provision requires the Attorney General to determine "whether the State provides standards of competency for the appointment of counsel in proceedings described in subparagraph (A)." The preamble to the 2008 final rule reasoned that "[i]n context, the phrase 'competent counsel' in section 2265(a)(1)(A) *must* be understood as a reference to the standards of counsel competency that the states are required to adopt by section 2265(a)(1)(C)." 73 Fed. Reg. at 75,331 (emphasis added). The preamble further explained that "[i]f the reference to 'competent counsel' in section 2265(a)(1)(A) were a directive to the Attorney General to set independently the counsel competency standards that states must meet for chapter 154 certification, then the section 2265(a)(1)(C) requirement that the states provide such standards would be superfluous, and section 2265 would be internally inconsistent as to the assignment of responsibility for setting counsel competency standards." *Id.*

In our view, however, these provisions do not compel the preamble's conclusion. There is no express direction in the text of section 2265 that the Attorney General perform his certification function under subsection (a)(1)(A) solely with reference to the standards of competency that a State provides pursuant to subsection (a)(1)(C). The text of subsection (a)(1) instead may be read to require the Attorney General to make three distinct and independent determinations—those enumerated in subparagraphs (A)-(C)—each without reference to the other.

1. In reaching this conclusion, we begin with the fact that nothing in the text of subsection (a)(1)(A), standing alone, compels the conclusion that the Attorney General must make his determination with reference to a State's standards of counsel competency. Indeed, subsection (a)(1)(A) neither mentions such state-promulgated standards nor references subsection (a)(1)(C). The absence of such an explicit direction or reference is significant. In general, it is fair to presume that Congress does not intend for state officials to be solely responsible for construing and giving content to a federal statutory term—such as "competent" in subsection (a)(1)(A)—that is ambiguous and not otherwise defined. As the Supreme Court has made clear, there is a "general assumption" that "in the absence of a plain indication to the contrary . . . Congress when it enacts a statute is not making the application of the federal act dependent on state law." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989) (internal quotation marks omitted).

That general assumption is especially warranted here because the statutory framework at issue appears to have specifically charged a *federal* official with interpretive authority. Congress assigned the Attorney General—not the States themselves—the function of certifying state mechanisms, a task requiring that the Attorney General determine whether the State's proffered mechanism qualifies as one that is "for the appointment, compensation, and payment of

reasonable litigation expenses of *competent* counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death." 28 U.S.C. § 2265(a)(1)(A) (emphasis added). We presume that the Attorney General has discretion to resolve statutory ambiguities contained in the statutory scheme he is charged with administering. The term "competent" is plainly a generality open to varying constructions. It is thus fair to conclude from the text of subsection (a)(1)(A) standing alone that, by assigning to the Attorney General the obligation to determine whether a State has established a qualifying mechanism for appointing competent counsel, Congress intended the Attorney General to resolve the ambiguity and to provide a reasonable interpretation of the word "competent." *See National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) ("ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion").[3]

Although subsection (a)(1)(A) does not refer to the state standards for competency described in subsection (a)(1)(C), it is true that subsection (a)(1)(C) does expressly refer to subsection (a)(1)(A). In our view, however, that cross-reference does not suffice to compel the approach taken in the 2008 final rule. In fact, if anything, the cross-reference points in the opposite direction. The reference to subsection (a)(1)(A) in subsection (a)(1)(C) is not an express directive to the Attorney General to conform his judgments under subsection (a)(1)(A) to the competency standards that subsection (a)(1)(C) requires him to determine that a State has established. Rather, the reference to subsection (a)(1)(A) is more naturally read as a shorthand means of identifying the kind of "proceedings" for which States must provide standards of competency for the appointment of counsel. Indeed, the fact that Congress chose to refer back to subsection (a)(1)(A) in subsection (a)(1)(C) but, in doing so, did not expressly direct the Attorney General to conform his determination under subsection (a)(1)(A) to the standards that a State must provide under subsection (a)(1)(C), is itself significant. It shows that although Congress included statutory language cross-referencing provisions of section 2265(a)(1) in another context, it chose not to expressly constrain the Attorney General's subsection (a)(1)(A) determination by reference to subsection (a)(1)(C).

Similarly, the amended law unambiguously requires the federal habeas courts to give effect to the Attorney General's certification determinations. The courts' limited role in this regard is demonstrated by section 2261(b)(1), which expressly requires courts to accept the Attorney General's certification under section 2265(a)(1)(A) in determining whether the expedited procedures apply. By contrast, the 2006 amendments do not contain express language similarly requiring the Attorney General to accept the State's appointment mechanism or competency standards in making his certification determination. Rather, section 2265(a)(1)(A) provides only that "[t]he Attorney General shall determine . . . whether the state has established" the required mechanism. It makes no reference—either in the provision itself or by cross-reference—to state standards that would cabin this authority.

---

[3] The fact that the Attorney General's certification decisions are subject to *de novo* review by the United States Court of Appeals for the District of Columbia Circuit is not inconsistent with Congress's decision to confer interpretive authority on the Attorney General. *See United States v. Haggar Apparel Co.*, 526 U.S. 380, 391 (1999).

Although the preamble to the 2008 final rule did not contend that Congress expressly conferred upon the States the preclusive authority to define competency in a manner binding on the Attorney General's subsection (a)(1)(A) certification determination, the preamble did assert that the structure of section 2265 impliedly compels the conclusion that the States possess such preclusive authority. The preamble observes in this regard that an "internal[] inconsisten[cy]" would result from a contrary view because States would then be authorized to issue standards for competency that the Attorney General could reject. 73 Fed. Reg. at 75,331.

We do not see, however, how such a structure would necessarily introduce any such inconsistency. States seeking certification would have discretion to craft their own competency standards pursuant to subsection (a)(1)(C), and the Attorney General would then review those standards as part of his evaluation of whether the state mechanism ensures the appointment of counsel who meet minimum federal competency standards pursuant to subsection (a)(1)(A). In this respect, the relationship between the counsel competency standards applied as a matter of federal law by the Attorney General and the standards provided by the States would resemble the "cooperative federalism" model that is familiar from a number of federal statutory regimes. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 183 (1982) (describing the Education of the Handicapped Act, Pub. L. No. 91-230, 84 Stat. 175 (1970), as amended, as "leav[ing] to the States the primary responsibility for developing and executing educational programs for handicapped children," but "impos[ing] significant requirements to be followed in the discharge of that responsibility"); *see also Wisconsin Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 495 (2002) (observing that "[t]he Medicaid statute . . . is designed to advance cooperative federalism," and that "[w]hen interpreting other statutes so structured, we have not been reluctant to leave a range of permissible choices to the States, at least where the superintending federal agency has concluded that such latitude is consistent with the statute's aims").

Indeed, although the preamble to the 2008 final rule suggests that an approach contrary to that final rule would be anomalous, the approach adopted in that final rule would introduce anomalies of its own. First, the 2008 final rule provides no explanation for why Congress would lodge the certification function in the Attorney General—thus drawing on his time and expertise—if it intended his responsibilities in this capacity to be ministerial in nature. Second, the preamble to the 2008 final rule does not explain why, absent express indications to the contrary, one should assume Congress intended to establish a statutory framework that confers an "array of procedural benefits" on States, contingent upon their meeting a required set of qualifications, 152 Cong. Rec. S1625 (daily ed. Mar. 2, 2006) (statement of sponsor Sen. Kyl), but to leave wholly within the discretion of the beneficiary States themselves the determination of a critical substantive criterion upon which eligibility under this framework depends. Thus, concerns about statutory anomalies do not provide a necessary reason to construe section 2265 as compelling the approach adopted in the 2008 final rule.

Finally, the preamble to the 2008 final rule relied on the fact that the 2006 amendments to AEDPA added a provision (section 2265(a)(3)) providing that "[t]here are no requirements for certification or for application of [chapter 154] other than those expressly stated in [chapter 154]." 73 Fed. Reg. at 75,331. The text of section 2265(a)(3) does not, however, compel the limited view of the Attorney General's interpretive authority that the 2008 final rule adopted. In reasonably construing an ambiguous term in a statute that he is charged with administering, the Attorney General would not be adding to the requirements for certification, or otherwise applying chapter 154 in ways not expressly stated. He would merely be implementing an express statutory provision—the certification requirement that a State establish a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of *competent* counsel, 28 U.S.C. § 2265(a)(1)(A)—just as agency officials regularly do in other contexts under the now familiar *Chevron* framework. *See Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 844 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.").

2. The legislative history of chapter 154 accords with our conclusion that section 2265(a)(1)(A) may be read to afford the Attorney General the authority, in the course of exercising his certification function, to construe the term "competent" independent of the standards the States themselves establish. To be sure, the legislative history makes clear that the sponsors of the 2006 amendments were concerned with the manner in which federal habeas courts had been approaching their role in the chapter 154 qualification process. *See, e.g.*, 152 Cong. Rec. S1624 (daily ed. Mar. 2, 2006) (statement of Sen. Kyl) ("Chapter 154 has received an extremely cramped interpretation, denying the benefits of qualification to States that do provide qualified counsel and eliminating the incentive for other States to provide counsel."). But the sponsors' concerns do not suggest that, in establishing a new role for the Attorney General in certifying state mechanisms, Congress meant to dispense with independent federal review of the adequacy of those mechanisms. To see why, it is helpful to examine the origins of the 2006 amendments.

Although the 2006 amendments made federal habeas court judgments about the availability of expedited habeas procedures dependent upon the Attorney General's prior certification, it is significant that these provisions did not alter the terms of the substantive requirements that States had to meet in order to qualify for those procedures. Prior to the 2006 amendments, States already had to "establish a mechanism for the appointment" of counsel who were competent, and to establish competency standards for such counsel, in order to qualify for the expedited procedures. Yet, when Congress initially imposed these substantive requirements in 1996, and for the decade thereafter, the relevant language was not understood to reflect a congressional intent to insulate States from independent federal review of whether their mechanisms for appointing counsel, as well as the counsel competency standards they provided, were adequate to qualify for expedited habeas procedures.

Congress's original 1996 enactment came in response to a proposal of the 1989 Report of the Ad Hoc Committee of the Judicial Conference on Federal Habeas Corpus in Capital Cases,

known as the "Powell Committee Report" (because the Committee was chaired by former Supreme Court Justice Lewis Powell). H.R. Rep. No. 104-23, at 16 (1995). Following the Committee's recommendations, AEDPA created a system to induce States to provide indigent capital defendants with post-conviction representation, offering what was described in the legislative history as a "quid pro quo," or an "opt-in" system, now codified as chapter 154. *Id.* at 10, 16. As one of the chief sponsors of the 2006 amendments to chapter 154 acknowledged, with a few changes not relevant here, "the Powell Committee Report's recommendations are what is now chapter 154," and that Report "is thus a very useful guide to understanding chapter 154." 152 Cong. Rec. S1626 (daily ed. Mar. 2, 2006) (statement of Sen. Kyl); *see also Ashmus v. Woodford*, 202 F.3d 1160, 1163 (9th Cir. 2000) (chapter 154 "essentially codifie[d]" the Powell Committee proposal); H.R. Rep. No. 104-23, at 16 (H.R. 729, which became section 107(a) of AEDPA, "incorporates" the Powell Committee Report's recommendations).

Like the current section 2265(a)(1)(A), the Powell Committee Report's proposed 28 U.S.C. § 2256(b) would have provided a State with advantageous procedures in federal habeas proceedings brought by capital defendants if the State established "a mechanism for the appointment, compensation and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes." 135 Cong. Rec. 24,696 (1989). And, like current section 2265(a)(1)(C), the Powell Committee Report's proposed section 2256(b) also would have required the State to "provide standards of competency for the appointment of such counsel." *Id.* The express purpose of the structure envisioned by the Powell Committee Report was to ensure that collateral review of capital convictions would "be fair, thorough, and the product of capable and committed advocacy." *Id.*; *see also id.* at 24,695 ("[F]or States that are concerned with delay in capital litigation, it is hoped that the procedural mechanisms we recommend will furnish an incentive to provide the counsel that are needed for fairness."). "Central to the efficacy of this scheme," the Committee wrote, was "the development of standards governing the competency of counsel chosen to serve in this specialized and demanding area of litigation." *Id.* at 24,696; *see also id.* ("Only one who has the clear ability and willingness to handle capital cases should be appointed."). The Committee explained that it was "more consistent with the federal-state balance to give the States wide latitude to establish a mechanism that complies with [the scheme]." *Id.* But, critically for present purposes, the Committee stressed that "[t]he final judgment as to the adequacy of any system for the appointment of counsel under subsection (b) . . . *rests ultimately with the federal judiciary*." *Id.* (emphasis added).

By enacting section 107(a) of AEDPA in 1996, Congress codified (in what was then 28 U.S.C. § 2261(b)) language that is essentially the same as appeared in the Powell Committee Report and that now appears in section 2265(a)(1), *see supra* p. 3. Congress did not adopt the Judicial Conference's suggested amendment that would have established federal statutory

standards for counsel competence,[4] but the framework it enacted was consistent with the suggestion of the Powell Committee that there be independent federal review to determine "[t]he final judgment as to the *adequacy* of any system for the appointment of counsel." 135 Cong. Rec. 24,696 (emphasis added). And, indeed, during the decade the original AEDPA language was in effect, federal habeas courts construed then-section 2261(b) to permit their independent review of the "adequacy" of the States' competency standards.[5]

To be sure, the sponsors of the 2006 amendments to AEDPA intended to bring about an important change in the framework that the Powell Committee Report proposed and that Congress enacted into law in 1996. But the legislative history of the 2006 amendments suggests that the sponsors were concerned with the consequences of leaving the adequacy review in the hands of federal habeas courts rather than with the prospect of federal officials in general—let alone the Attorney General in particular—exercising independent authority to evaluate counsel competence.

The legislative history shows that the sponsors focused on at least three specific problems they perceived in the AEDPA process, each of which they addressed with new language in the

---

[4] *See* Report of the Proceedings of the Judicial Conference of the United States 8 (Mar. 13, 1990); *cf.* 18 U.S.C.A. § 3599 (West Supp. 2008) (providing for the appointment of counsel for indigent capital defendants in post-conviction proceedings in federal court and setting qualifications that such counsel must meet).

[5] For example, numerous district courts concluded that States defending capital convictions were not entitled to expedited habeas procedures because the state competency standards did not provide for the appointment of counsel with adequate experience and skills in various facets of that specialized area of practice. *See Colvin-El v. Nuth*, No. Civ. A. AW 97-2520, 1998 WL 386403, at *6 (D. Md. July 6, 1998) (Maryland's competency standards not "adequate" because they did not require counsel to have experience or competence in raising collateral issues: "Given the extraordinarily complex body of law and procedure unique to post-conviction review, an attorney must, at a minimum, have some experience in that area before he or she may be deemed 'competent.'"); *Wright v. Angelone*, 944 F. Supp. 460, 467 (E.D. Va. 1996) (Virginia's competency standards are "deficient" and "grossly inadequate," and "fail to satisfy the requirements of [chapter 154]," because a state must require counsel "to have experience and demonstrated competence in bringing habeas petitions"); *Hill v. Butterworth*, 941 F. Supp. 1129, 1142 (N.D. Fla. 1996) ("[t]he plain language of 28 U.S.C. § 2261 contemplates counsel who are competent *through capital, post-conviction experience*"; and Florida's competency standards were not "adequate" because they did not require "any degree of specialization or skill in the arena of habeas proceedings" and made "no provision for any degree of competence or experience for substitute counsel"), *vacated on other grounds*, 147 F.3d 1333 (11th Cir. 1998); *see also Austin v. Bell*, 927 F. Supp. 1058, 1061-62 (M.D. Tenn. 1996) ("Although Tennessee provides for the appointment of counsel for indigent defendants, and has standards for determining whether appointed counsel has sufficiently performed, Tennessee imposes insufficient standards to ensure that only qualified, competent counsel will be appointed to represent habeas petitioners in capital cases.") (internal citations omitted).

Courts of appeals consistently engaged in a similar analysis in determining whether States were entitled to the benefits set forth in the pre-2006 chapter 154. *See, e.g., Baker v. Corcoran*, 220 F.3d 276, 286 n.9 (4th Cir. 2000) (noting that its ruling on a different ground obviated the need to "consider whether Maryland's competency standards, if complied with, are adequate to ensure that prisoners subject to capital sentences receive competent representation in post-conviction proceedings"); *Ashmus v. Calderon*, 123 F.3d 1199, 1208 (9th Cir. 1997) (concluding that "a state's competency standards need not require previous experience in habeas corpus litigation" because "[m]any lawyers who could competently represent a condemned prisoner would not qualify under such a standard"), *rev'd on other grounds*, 523 U.S. 740 (1998), *vacated*, 148 F.3d 1179 (9th Cir. 1998).

2006 amendments. None of these responses indicates that the sponsors intended to require the Attorney General to make his certification decision solely on the basis of the competency standards established by the States. The legislative history of the new amendments suggests, if anything, that the Attorney General would instead be able to bring his expertise to bear in exercising the new certification authority that Congress conferred upon him.

First, the sponsors expressed the view that the courts hearing prisoner habeas cases could not fairly assess whether States satisfied the statutory standards because such courts had a "conflict of interest" on the question. 151 Cong. Rec. E2640 (daily ed. Dec. 22, 2005) (extended remarks of Rep. Flake). "Currently, . . . the court that decides whether a State is eligible for chapter 154 is the same court that would be subject to its time limits. Unsurprisingly, these courts have proven resistant to chapter 154." 152 Cong. Rec. S1620 (daily ed. Mar. 2, 2006) (statement of Sen. Kyl).[6] To address this issue, section 507 of the PATRIOT Improvement Act "places the eligibility decision in the hands of a neutral party—the U.S. Attorney General, with review of his decision in the D.C. Circuit, which does not hear habeas petitions." *Id.* If anything, then, this legislative history suggests that the legislation was designed to substitute one independent federal reviewer (the habeas judge) with another (the Attorney General) thought more likely to be "neutral." *See also* 151 Cong. Rec. E2640 (extended remarks of sponsor Rep. Flake) (explaining that Congress was conferring upon the Attorney General the authority to certify state mechanisms under section 2265(a)(1) in part because he "has expertise in evaluating State criminal justice systems"). That the sponsors of the legislation thought the Attorney General would be the more appropriate reviewing entity hardly indicates that Congress intended to make the Attorney General's judgment dependent upon the States' own.

Second, section 107 of AEDPA had provided that the state appointment mechanism could be established "by statute, rule of its court of last resort, or by another agency authorized by State law." 28 U.S.C. § 2261(b) (2000). Congress's excision of this language in the 2006 amendments addressed the concern that arose from court decisions that construed such language to significantly constrain the manner in which a State could establish such a mechanism. For example, Senator Kyl, a sponsor of the 2006 amendments, pointed to *Ashmus*, 202 F.3d 1160, in which the U.S. Court of Appeals for the Ninth Circuit held that California did not qualify under chapter 154 because the State's competency standards were contained in its Standards of Judicial Administration rather than in its Rules of Court; Senator Kyl called this conclusion "a hypertechnical reading of the statute." 152 Cong. Rec. S1625. The 2006 amendments "abrogated" this ruling by removing the "statute or rule of court" language that had been "construed so severely by *Ashmus*," so that "[t]here is no longer any requirement, express or implied, that any particular organ of government establish the mechanism for appointing and

---

[6] *See also* 152 Cong. Rec. S1624 (statement of Sen. Kyl) ("AEDPA left the decision of whether a State qualified for the incentive to the same courts that were impacted by the time limits. This has proved to be a mistake."); 151 Cong. Rec. E2640 (extended remarks of Rep. Flake) ("The trouble with chapter 154 is that the courts assigned to decide when it applies are the same courts that would be bound by the chapter's strict deadlines if a State is found to qualify. Simply put, the regional courts of appeals have a conflict of interest.").

paying counsel or providing standards of competency—States may act through their legislatures, their courts, through agencies such as judicial councils, or even through local governments." *Id.*

Finally, the sponsors of the 2006 amendments expressed particular concern with courts concluding that even when the federal statutory requirements had been satisfied, additional procedures could be imposed as a matter of judicial discretion. In particular, the sponsors expressed concern about the Ninth Circuit's decision in *Spears v. Stewart*, 283 F.3d 992 (9th Cir. 2001). In that case, the court of appeals held that even though Arizona's counsel appointment mechanism (including Arizona's competency standards) on its face *satisfied* the requirements of chapter 154, the State was nonetheless not entitled to benefit from the expedited procedures in the particular case because its appointment of the petitioner's counsel did not comply with the State's own requirement that counsel be appointed in an expeditious manner. *Id.* at 1018-19. *See* 151 Cong. Rec. E2640 (extended remarks of Rep. Flake) (noting that the Ninth Circuit "found that Arizona's counsel system met chapter 154 standards, but . . . nevertheless came up with an excuse for refusing to apply chapter 154 to that case"); 152 Cong. Rec. S1625 (statement of Sen. Kyl) (similar). According to the sponsors of the legislation, 28 U.S.C. § 2265(a)(3), which "forbids creation of additional requirements not expressly stated in the chapter, as was done in the *Spears* case," 152 Cong. Rec. S1625, addressed this concern. Congress's intent to limit the requirements for certification to those "expressly stated," therefore, does not indicate a corollary intent to strip the Attorney General of the authority to apply those requirements that are "expressly stated," including the requirement in section 2265(a)(1)(A) that States establish a mechanism for the appointment of "competent counsel."

3. For all of these reasons, we believe it would be reasonable to construe section 2265(a)(1) to permit the Attorney General to certify only those state mechanisms that provide for the appointment of counsel who meet a minimum federal threshold of competency. If you so construe the statute, then you may conduct the competency evaluation entirely on a case-by-case basis as particular state mechanisms are presented for your certification. Alternatively, pursuant to section 2265(b), you may promulgate regulations that set forth the federal minimum competency standards that you will apply in making certification determinations, although you are not required to take this action. Under either approach, however, we believe that, consistent with the "traditional tools of statutory construction," *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987), you may look to a variety of sources in giving content to the federal standards that you promulgate and apply.[7] We believe, however, that the text of subsection (a)(1)(C), when read in

---

[7] A nonexhaustive list of sources you might consult in interpreting the term "competent counsel" would include judicial precedent, *see, e.g.*, *McFarland v. Scott*, 512 U.S. 849, 855-56 (1994) ("capital defendants [are unlikely to be] able to file successful petitions for collateral relief without the assistance of persons learned in the law") (internal quotation marks omitted); federal statutes, *see, e.g.*, 18 U.S.C. §§ 3599(c)-(d) (setting qualifications that counsel must have in order to represent indigent capital defendants in post-conviction proceedings in federal court); the Model Rules of Professional Conduct, *see, e.g.*, American Bar Ass'n, Model Rules of Prof'l Conduct R. 1.1 (2007) ("Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."); and American Bar Association guidelines, *see, e.g.*, American Bar Ass'n, Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (rev. ed. 2003), *reprinted in* 31 Hofstra L. Rev. 913 (2003); *see also Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (observing that the Supreme Court "long ha[s] referred" to American Bar Association "standards for capital defense work" "as 'guides

light of the legislative history of chapter 154, counsels against imposing too stringent a federal standard.  A federal standard that is set too high would not afford the States discretion, as contemplated by Congress, to develop their own standards, within reasonable bounds, of counsel competency and mechanisms for ensuring that competent counsel are appointed.  In particular, an unduly onerous standard might render trivial the section 2265(a)(1)(C) requirement that the States develop and provide their own standards of competency.  Although we reject the view that subsection (a)(1)(C) must be read to bind the Attorney General to a State's chosen competency standards, that subsection may fairly be construed to reflect Congress's intent that the Attorney General not unduly constrain state discretion by imposing an overly stringent, one-size-fits-all federal standard of counsel competency.  And that same conclusion accords with the legislative history that is relevant here.

**B.**

You have also asked us whether chapter 154 can reasonably be construed to require the Attorney General to evaluate whether a proposed state appointment mechanism—including, in particular, a State's provision of a certain level of attorney compensation—is adequate to ensure that competent counsel will, in fact, be appointed for capital prisoners in state postconviction proceedings.  The 2008 final rule appeared to construe the statute to *prohibit* the Attorney General from making such an evaluation.  With particular respect to compensation, the preamble to the 2008 final rule concluded that chapter 154 "requires only that the state have a mechanism for the 'compensation' of postconviction capital counsel, leaving determination of the level of compensation to the states."  73 Fed. Reg. at 75,331.  In explaining this approach, the preamble relied in part on section 2265(a)(3), reasoning that "[p]rescribing minimum amounts of compensation to ensure 'adequate' or 'reasonable' compensation . . . would add to the statutory requirements for certification, which 28 U.S.C. § 2265(a)(3) does not allow."  73 Fed. Reg. at 75,332; *see also id.* at 75,331 (subsection (a)(3) prohibits "the Attorney General . . . from supplanting the states' discretion in th[e] area [of attorney compensation]").

In our view, this conclusion set forth in the preamble to the 2008 final rule is not warranted.  Section 2265(a)(1)(A), by its plain terms, requires the Attorney General to determine whether the State has established a mechanism for the compensation of counsel who are "competent."  We believe this language may reasonably be construed to require the Attorney General to determine whether a particular state mechanism would, in fact, ensure appointment of competent counsel.  Moreover, we believe that in making such a determination it would be reasonable to conclude that a state appointment mechanism must provide for compensation at a

---

to determining what is reasonable'") (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *cf. Bobby v. Van Hook*, 558 U.S.__, 130 S. Ct. 13, 17 n.1 (2009) (per curiam) (reserving the question of whether it would be legitimate to use the 2003 ABA guidelines to evaluate whether an attorney's performance meets the reasonableness standard required by the Sixth Amendment; explaining that for such use to be proper, "the Guidelines must reflect '[p]revailing norms of practice' . . . and must not be so detailed that they would 'interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions'") (quoting *Strickland*, 466 U.S. at 688-89).

level sufficient to encourage competent attorneys to accept appointments and to enable those attorneys to provide their capital clients with competent legal representation (unless the state mechanism by some other means ensures representation by competent counsel notwithstanding low compensation rates).

To be sure, there is no language specifically authorizing the Attorney General to evaluate the adequacy of attorney compensation provided by a State's appointment mechanism. Moreover, while section 2265(a)(1)(A) mandates that the State provide reimbursement for "reasonable" litigation expenses, it does not similarly qualify the requirement of attorney "compensation." But we do not think the absence of explicit statutory text establishing that a state appointment mechanism must pay attorneys a certain level of compensation demonstrates that Congress intended for the Attorney General to be indifferent as to the level of compensation the State provides. *Cf. Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. ___, 129 S. Ct. 1498, 1508 (2009) (deeming it "eminently reasonable to conclude that [statutory provision's] silence" on whether an agency can employ cost-benefit analysis "is meant to convey nothing more than a refusal to tie the agency's hands").

This conclusion draws support from the close nexus between the adequacy of compensation, on the one hand, and the ability and willingness of competent attorneys to take on indigent capital clients and provide them with effective representation, on the other—a nexus recognized in longstanding guidelines and standards for capital counsel. *See* American Bar Association, Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases § 9.1 (rev. ed. 2003), *reprinted in* 31 Hofstra L. Rev. 913, 981 (2003) ("Counsel in death penalty cases should be fully compensated at a rate that is commensurate with the provision of high quality legal representation and reflects the extraordinary responsibilities inherent in death penalty representation."); *see also id.* § 9.1 cmt., *reprinted in* 31 Hofstra L. Rev. at 986 ("Low fees make it economically unattractive for competent attorneys to seek assignments and to expend the time and effort a case may require."); *cf.* 18 U.S.C. § 3599(g)(1) (setting minimum compensation level in providing for appointment of counsel for a defendant otherwise "unable to obtain adequate representation" in a federal criminal action involving a capital charge). Judicial precedent from the decade before the 2006 amendments also supports this reading. Several courts that had to determine whether States qualified for the benefits of chapter 154 assumed that the pre-2006 version of section 2261(b) required independent evaluation of the adequacy of the compensation that a State seeking certification provided the attorneys appointed pursuant to its mechanism.[8] As the U.S. District Court for the District of Maryland observed, "although § 2261(b) does not expressly require that a State establish a mechanism for the payment of reasonable compensation, . . . [c]learly, the payment of at least

---

[8]  *See, e.g., Ashmus*, 123 F.3d at 1208; *Baker*, 220 F.3d at 285-86; *Colvin-El*, 1998 WL 386403, at *4; *Booth v. Maryland*, 940 F. Supp. 849, 854 n.6 (D. Md. 1996), *judgment vacated on other grounds*, 112 F.3d 139 (4th Cir. 1997); *cf. Spears*, 283 F.3d at 1015 (chapter 154 "requires that the appointment mechanism reasonably compensate counsel"); *Mata v. Johnson*, 99 F.3d 1261, 1266 (5th Cir. 1996) (holding that "we do not find [Texas's] limits" on attorney compensation and litigation expense reimbursement "facially inadequate"), *vacated in part on other grounds*, 105 F.3d 209 (5th Cir. 1997).

minimally reasonable compensation is necessary to obtain competent counsel, an express requirement of § 2261(b)." *Booth v. Maryland*, 940 F. Supp. 849, 854 n.6 (D. Md. 1996), *judgment vacated on other grounds*, 112 F.3d 139 (4th Cir. 1997).

Because we have found no evidence in the language or legislative history of chapter 154 to suggest that Congress clearly intended a different understanding, we conclude that you may interpret the statute to permit evaluation of whether a proposed state mechanism—including the State's compensation system—is sufficient to ensure appointment of competent counsel in state postconviction proceedings brought by indigent prisoners who have been sentenced to death.[9] We also conclude that you may promulgate regulations pursuant to section 2265(b) that set forth the standards you will apply in making such a determination.

/s/

DAVID J. BARRON
Acting Assistant Attorney General

---

[9] You have not asked us to address, and we do not address here, whether the Attorney General could impose a time-limit, or sunset, on his certification of a state mechanism, or whether he would be authorized to revisit and reconsider a chapter 154 certification if a certified state mechanism proves inadequate in practice to ensure appointment of competent counsel.